**STATE of Missouri, Respondent,**

v.

**Jerome C. WEBB, Appellant.**

**No. WD 37736.**

Missouri Court of Appeals,
Western District.

April 7, 1987.

Application for Transfer Sustained
June 2, 1987.

Case Retransferred Sept. 30, 1987.

Court of Appeals Opinion Readopted
Oct. 7, 1987.

Robert G. Duncan, Peter M. Schloss, Kansas City, for appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and DIXON and TURNAGE, JJ.

TURNAGE, Judge.

Jerome C. Webb was found guilty by a jury of three counts of sodomy, § 566.060, RSMo Cum.Supp.1984. The court imposed the jury sentence of seven years on each of two counts and fifteen years on the third count. The court failed to designate whether the sentences were to be concurrent or consecutive.

Webb contends the court erred in refusing to allow a rebuttal witness to testify and in refusing to allow evidence regarding whether one of the alleged victims had lied on a previous occasion. Affirmed

In June, 1984 Teresa M. and Amy J. accompanied Amy's mother, Joy, and Joy's friend, Jerome Webb, on a trip to the Smithville Lake in Clay County. Teresa was about twelve and Amy was about seven.

Both girls testified that they were in the water when Webb joined them. They asked Webb to throw them into the water and he did so. Both girls testified that in the process of lifting them up and throwing

them, Webb placed his hand under their bathing suits and inserted his finger into their vaginas.[1]

After the first trip to Smithville Lake, Amy accompanied Webb and her mother on a second trip to the lake. Amy testified that Webb again placed his finger in her vagina while they were in the water.

After Teresa and Amy had testified, the public defender requested leave to endorse Michael Armstrong as a witness and to call him in rebuttal. At the request of both parties, the court had invoked the rule requiring witnesses to remain outside the courtroom while other witnesses testified. The state objected to allowing Armstrong to testify on the grounds that he had been in the courtroom during Amy's testimony. The public defender made an offer of proof concerning the testimony of Armstrong. The court sustained the state's objection and refused to allow Armstrong to testify.

Counsel on appeal (who is not the lawyer who tried the case) first contends that the court erred in refusing to allow Armstrong's testimony. He argues that Armstrong's testimony was needed to impeach the alleged victims by introducing out-of-court statements inconsistent with their trial testimony.

Webb sought to attack two points in Teresa's trial testimony: her statements that Webb had thrown her into the air four times and that Amy's mother had not watched Webb and the girls the entire time they were in the water. Upon confrontation with a prior statement, Teresa denied having previously informed counsel that Webb had thrown her up in the air two times, rather than four times. Defense counsel also confronted Teresa with a prior out-of-court statement that Amy's mother was watching and stood very close to Webb as he threw the girls into the air. Webb argues that this out-of-court statement conflicted with Teresa's testimony that Amy's mother was not watching Webb and the girls all of the time, because she was sometimes watching her son.

Webb also sought to use Armstrong to impeach Amy's testimony with regard to three points. First, he sought to impeach her testimony that she never used certain language to describe the crime. Counsel confronted Amy with an alleged out-of-court statement that Webb had put his finger in her "p——." Amy denied ever having used that word. Second, Webb contends that although Amy had previously said out-of-court that she had seen Webb put his "d—" into her, at trial Amy denied that she had seen what Webb was putting into her. Third, Webb sought to introduce Armstrong's testimony that Amy said Webb molested her three times.

Webb contends that the court erred in excluding Armstrong because he had been present during other testimony. Webb relies upon *State v. Shay*, 339 S.W.2d 799 (Mo.1960).

■■■ One difficulty with Webb's argument is that his offer of proof did not include the matters now urged regarding Teresa's testimony. Webb argues that Armstrong should have been allowed to testify that prior to trial Teresa made statements that Webb threw her into the water two times (rather than four times) and that Joy was watching as Webb threw the girls into the water. In the offer of proof regarding Teresa's testimony, counsel only offered to prove that Teresa said Webb made threats against the two girls on the beach, rather than in the water. The court must assume that a party making an offer of proof has stated his offer as fully and favorably as he could. *State v. Rinehart*, 646 S.W.2d 827, 829 (Mo.App. 1982). The offer of proof failed to mention any out-of-court statement which would have been proper impeachment of Teresa, or to demonstrate any other relevant evidence Armstrong could have given regarding Teresa.

---

1. Sodomy is committed when a person has deviate sexual intercourse with another person who is less than 14 years old. Section 566.060.(3). Deviate sexual intercourse is defined in § 566.-010.1(2), RSMo 1978, as any sexual act involving the genitals of one person and (inter alia) the hand of another person.

By the same token, no record was made to show Armstrong could have impeached Amy's denial at trial that Webb molested her three times. Again, matters not mentioned in the offer of proof cannot be considered on this appeal.

■ Of the matters properly preserved for review in the offer of proof, the first was an offer of evidence on the collateral issue of whether Amy had used certain language in referring to the crime. On cross-examination of Amy, counsel asked her if Webb had put his finger in her "p—". Amy denied ever using the word "p—". The offer of proof indicated Armstrong would testify that Amy had made an out-of-court statement in which she used the word "p—".

Amy's denial that she used the word "p—" is a collateral matter under the circumstances. Amy fully testified as to Webb's act of putting his finger in her between her legs. She did not name the place he put his finger. However, it is clear from her testimony that she described the act of Webb in placing his finger in her vagina. Counsel does not argue otherwise. The only argument is that Amy should have been impeached on whether or not she had called her vagina her "p—". The name by which Amy called the place where Webb had placed his finger was a collateral matter, because it was "of no material significance in the case or is not pertinent to the issues as developed." *State v. Simmons,* 559 S.W.2d 557, 560[3–5] (Mo.App. 1977). There was no abuse of discretion in the action of the trial court in refusing this rebuttal testimony, because the rebuttal went to a wholly collateral matter. *State v. Fortune,* 607 S.W.2d 451, 452–53[1–3] (Mo.App.1980). Since the testimony related to a collateral matter, there is no need to consider whether or not the court erred in refusing to allow Armstrong to testify because of his violation of the rule excluding witnesses. *Fortune,* 607 S.W.2d at 453.

■ The next item in the offer of proof was that Armstrong would contradict Amy's statement that she did not see Webb's penis. This aspect of Armstrong's proposed testimony is not admissible be-cause no foundation was laid by confronting Amy with the prior inconsistent statement. *State v. Vaughn,* 501 S.W.2d 839, 842[2] (Mo. banc 1973); *State v. Denmon,* 635 S.W.2d 345, 348[1] (Mo.1982).

■ Webb next contends the court erred in sustaining the state's objection to cross-examination of Teresa's mother regarding whether Teresa told her mother the truth. Webb contends that the inquiry was directed at Teresa's reputation for truth and veracity. In *State v. Schmidt,* 530 S.W.2d 424, 426[1] (Mo.App.1976), the court stated that character, good or bad, is to be established by proof of general reputation and not by evidence of particular acts. The relevant inquiry in this case was not whether or not Teresa had told her mother the truth, but Teresa's general reputation for telling the truth. The question as posed asked for irrelevant information, and the court properly sustained the objection.

■ The state contends the sentence for the three sodomy convictions should have been made to run consecutively under § 558.026.1, RSMo Cum.Supp.1984. That section provides so far as applicable:

1. Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.

The state relies on *State v. Toney,* 680 S.W.2d 268, 273[4] (Mo.App.1984); *Adams v. State,* 688 S.W.2d 401, 402[2, 3] (Mo.App. 1985); *State v. Blockton,* 703 S.W.2d 500, 507[5] (Mo.App.1985); and *State v. Shaw,*

701 S.W.2d 514, 517–18[4] (Mo.App.1985). The Eastern District in *Toney* construes the phrase "and for other offenses committed during or at the same time" to encompass other rape or sodomy offenses, as well as offenses not involving rape or sodomy. In short the court construed the "other offenses" clause to encompass sex crimes as well as non-sex crimes. The result reached by the Eastern District in all of the above cases has been that all sex crimes committed at the same time must carry sentences which run consecutively.

In *A.B. v. Frank*, 657 S.W.2d 625, 628[5] (Mo. banc 1983), the Court stated that it is the responsibility of courts in construing statutes to ascertain the legislative intent by giving effect to the plain language of the statute viewed as a whole.

The meaning of the word "other" is "not being the one (as of two or more) first mentioned or of primary concern ... being the ones distinct from the one or those first mentioned ... not the same ... different, distinct." Webster's Third New International Dictionary 1598 (1971 unabridged).

To give any effect to the word "other" as it appears in the phrase "other offenses committed" requires that the "other offenses" be offenses different or distinct from the offenses previously mentioned. Thus, to give the word "other" its plain meaning, the court must construe the word "other" to mean offenses different from rape, forcible rape, sodomy, forcible sodomy, or an attempt to commit one of these four offenses. Once the plain meaning of "other" is established, it becomes apparent that the legislature was referring to two distinct and different categories of offenses—rape and sodomy or attempt to commit those, on the one hand, and all other offenses, on the other hand.

An interpretation which construes the statute to mean that "other offenses" refers to other rape or sodomy offenses simply fails to give the word "other" its plain and ordinary meaning.

The statute uses the phrase "other offenses" later when it provides that the sentence of imprisonment imposed for the "other offenses" may run concurrently.

The fallacy of the *Toney* interpretation that "other offenses" includes rape and sodomy may be illustrated by the following. A person is convicted of two counts of rape and two counts of sodomy for crimes occurring at the same time. If "other offenses" is construed to mean sex crimes, then to give any effect to the provision that the sentence for other crimes may run concurrently, the court could impose concurrent sentences on two or three of the counts. But under the cases which have construed this section, the sentences in this illustration would be required to run consecutively. Such interpretation rewrites the section to eliminate the possibility that the sentences for the "other offenses" may be concurrent.

To give the statute its plain meaning, the words "other offenses" must refer to offenses other than rape, sodomy or an attempt to commit one of those crimes. Under that construction every provision of the statute may be given effect, because if a person is convicted of sex and non-sex crimes which occurred at the same time, the sentences for the non-sex crimes could run concurrently to each other, but the sentence for the sex crimes must be consecutive to the non-sex crimes. *Adams* suggests that the interpretation just propounded is illogical, because it would require consecutive sentences for rape and robbery, but not for rape and sodomy. 688 S.W.2d at 403. Whether such a result is logical or not depends on what purpose the legislature was trying to accomplish. The *Adams* court reached its result because of its own assumption about the legislature's policy goals in enacting the statute. The question before this court is not what policy the legislature should have chosen, but what meaning was intended by the language it did choose.

This court concludes that to give the statute its plain meaning, the phrase "other offenses" must be held to refer to non-sex crimes. Section 558.026.1 requires that consecutive sentences be given only for sex crimes when a rape or sodomy (or a rape or sodomy attempt) is committed at the same time as a crime not involving rape or sod-

omy (or a rape or sodomy attempt). Since there was no crime other than sodomy involved in this case, § 558.026.1 has no application to the two sodomy convictions based on crimes occurring at the same time. In addition to that reason, § 558.026.1 has no application to the third conviction, because the crime did not occur at the same time as the other two offenses.

The judgment is affirmed.

All concur.

