STATE of Missouri, Respondent,

v.

Fred HAMILTON, Appellant.

and

Fred HAMILTON, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 52830, 56969.

Missouri Court of Appeals,
Eastern District,
Division Five.

May 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1990.

Application to Transfer Denied
July 31, 1990.

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Defendant was convicted of five counts of rape and one count of kidnapping. He was sentenced as a persistent offender to thirty years for each rape count and fifteen years for the kidnapping count, all to be served consecutively for a total of 165 years. Defendant also filed a Rule 29.15 motion for post-conviction relief, which was denied. Defendant now appeals both his conviction and the denial of his Rule 29.15 motion.

On October 24, 1985, the seventeen year old victim left her home at 6:15 a.m. to walk to school. As she walked, a man wearing a gray jogging suit and white Nike tennis shoes exited a rust colored van and began following her. She asked him if he was following her and he stated that the police sent him to watch girls when they walked to school. Victim felt something was wrong and began to run. The man caught her, pushed her into an alley and they struggled. During the struggle, victim bit her assailant in the forehead, but she stopped fighting because she became afraid that the man was going to kill her.

The man then took victim back onto the street. When she attempted to attract the attention of a passerby, he stuck something heavy into her side and said he would kill her if she did that again. The man put victim into the driver's side of the van then pushed her onto the floor. He drove onto a highway and stopped at a deserted parking lot.

The man then took victim to the back of the van, undressed and ordered her to undress. He laid her down on a bed and had intercourse with her five times, with a period of time between each act. After the first and second acts, the man made victim masturbate him. After the third act, he rested while victim became ill and vomited on some red cloth and out the window of the van. After the fifth act, the man wiped victim off with a red cloth, told her to get dressed and drove to a different street. The man released her with a warning not to look back. Victim then ran to a nearby bank. The security guard at the bank testified that he let victim inside shortly after

9:00 a.m. and called the police when she said she had been raped.

Victim was taken to the hospital where it was determined that sperm was present in her vagina. Victim then assisted a police artist in producing sketches of her assailant and his van.

One month later, appellant was apprehended as a suspect in this case. Appellant matched victim's description of her attacker and he also had a scar on his forehead. Victim identified appellant in a four-person lineup and also identified his van. When apprehended, appellant's van contained certain items matching victim's account of the assault, including red rags, blue work clothes, a bed or couch, a redi-mix tool chest, gray sweats and white tennis shoes.

The state presented evidence of the above facts at trial. In addition, a criminologist testified that based on saliva tests, he determined both victim's and appellant's blood types. He also tested the semen stains from victim's underwear and determined that appellant was in the 61% of the male population who could have left the stain. The criminologist, Joseph Crow, came to this conclusion because victim was a type B secretor and he found B and H antigens in the semen. Thus, a B or O blood type or a non-secretor could have committed the crime. Appellant was determined to be a B blood type.

The defense did not present any evidence, but was able to expose some discrepancies in the victim's initial descriptions of her attacker and his van and the actual appearance of appellant and his van. The jury found appellant guilty of one count of kidnapping and five separate counts of rape.

At the sentencing hearing, the court addressed a defense motion for new trial based on newly discovered evidence. This evidence consisted of army records indicating that defendant received the scar on his forehead in an auto accident and that appellant's blood type was O positive, not B. Joseph Crow then testified before the court that he re-ran his tests and found he had made an error in typing appellant, victim

and the semen stains. He was able to determine appellant's and victim's blood types, but the semen stain had been destroyed or so diluted that he could not run a dispositive test. The result of this was that he could not isolate which blood types might have committed the crime. The court denied the motion for new trial, noting that victim's identification of appellant had been overwhelming evidence which rendered the blood tests and scar evidence minimal. The judge then sentenced appellant to thirty years on each rape count, which was the minimum sentence due to appellant's prior offender status, § 558.018.3, RSMo 1986, and fifteen years on the kidnapping count. The court rendered all these sentences to be consecutive under the belief that section 558.026, RSMo 1986, so required.

On January 29, 1988, appellant filed a pro se Rule 29.15 motion for post-conviction relief. The motion court appointed the public defender to represent appellant on March 3, 1988 but on March 11, the public defender was excused and the special public defender assumed the case. The court granted counsel until May 10 to file an amended motion. The motion was filed on that date and a hearing was held in September of 1988. The court denied the motion on November 7, primarily because it found that even if appellant's claims of ineffective assistance were true, he had suffered no prejudice.

Appellant now appeals the denial of this motion as well as the judgment in the underlying action. These appeals have been consolidated and we will first address appellant's direct appeal.

I

Appellant's points I and II on direct appeal concern the trial court's response to the evidence of state expert Joseph Crow's mis-typing of appellant's and victim's blood. First, appellant claims the court erred in denying a new trial because the new evidence required a new trial.

Newly discovered evidence may require a new trial, but that result is not

favored and is left to the discretion of the trial court. *State v. Amrine*, 741 S.W.2d 665, 674 (Mo. banc 1987). One of the things which a defendant must show before he is entitled to a new trial is that the newly discovered evidence is so material that it would probably produce a different result upon a new trial. *Id.*

That showing has not been made in the case at bar. The trial testimony showed appellant to be within the 61% of the male population who could have committed the crime; Mr. Crow's testimony after the new tests revealed that any male could have committed the crime. While the latter testimony is marginally in appellant's favor, the practical import of both is the same: neither test exonerates appellant and neither test clearly implicates him.

Appellant attempts to argue, in this point and throughout his briefs, that the identification evidence was weak and thus attempts to give more import to his claims of error. He places great emphasis on the discrepancies between victim's description of her attacker and appellant's appearance. Appellant ignores the many consistencies between himself and victim's initial report to the police. Appellant also fails to account for the fact that victim was in her attacker's presence for two and one half hours; it is reasonable to believe she could recall his features well enough to recognize him. In light of the strong similarities and identification, the discrepancies in victim's testimony appear to arise from the fact that she was distraught when she gave the original description and not from any inability to recognize appellant as her attacker.

Given the strong identification testimony of the victim, it is not probable that a new trial would have any different result. The trial court did not abuse its discretion in refusing a new trial.

Appellant next claims the court erred in holding that appellant was not denied a fair trial because false testimony was admitted and thus the conviction was manifestly unjust. *State v. Mooney*, 670 S.W.2d 510, 515 (Mo.App.1984). The false testimony referred to is Joseph Crow's trial testimony.

The law concerning false testimony applies to situations where a witness committed perjury at trial and the state knowingly used the perjured testimony. *Ray v. State*, 644 S.W.2d 663, 667 (Mo.App.1982). Appellant's reply brief claims that this point of law is cited merely to show how repugnant false testimony is and cites *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), in an attempt to extend this rule of law to condemn all mistaken testimony as well. Neither that case nor any other this court is aware of makes that leap of logic. As *Napue* itself states, the law concerning false testimony arises because the concept of ordered liberty cannot allow the state to *knowingly* use false evidence to obtain a conviction. 79 S.Ct. at 1177. There is no indication here that at the time of trial Joseph Crow's testimony was known to be false either by the state or by Mr. Crow himself. The law concerning false testimony is inapplicable to this case.

The court came to a similar conclusion in *Trotter v. State*, 736 S.W.2d 536 (Mo.App. 1987). Trotter was convicted of murdering a police officer. At trial, a ballistics expert testified that the .357 magnum gun received from another person fired the .38 caliber slug which killed the police officer. After trial, the expert conducted tests on the victim's .38 caliber gun and determined that, in fact, it was the murder weapon. The court noted that it was immaterial that this evidence was false because the expert's testimony was true and correct to the best of his knowledge at the time of trial and no prosecutorial misconduct was involved. *Id.* at 539.

The same is true here. The incorrect testimony did not constitute perjury and there was no prosecutorial misconduct. Thus there was no false testimony and the law does not mandate a new trial.

Appellant's third point on direct appeal claims the trial court erred in not declaring a mistrial when the prosecuting witness began crying on the stand. The record reflects that shortly after the victim took

the stand, the prosecutor asked her to describe the events on the day of the crime. When she reached the point where appellant approached her, victim began sobbing. The prosecutor approached the witness and she threw her arms around him, continuing to sob. After two or three minutes, it became apparent that the witness would continue crying and the prosecutor requested that the jury be removed. After the jury recused, the defense moved for a mistrial. The judge noted that the outburst was spontaneous and not prompted by the prosecutor and he held that the manner in which the incident was handled did not result in any prejudice to appellant.

■■■■ Emotional outbursts should, as far as possible, be prevented at trial and may be so inflammatory as to require a new trial. *State v. Swindell*, 271 S.W.2d 533, 536 (Mo.1954). Because neither court nor counsel may completely control witnesses, however, such events will occur and the court has broad discretion in dealing with hysterical witnesses. *State v. Johnson*, 672 S.W.2d 160, 163 (Mo.App.1984). When determining if a mistrial should be granted, the court may consider the spontaneity of the outburst, the further conduct of the trial, and the fact that a similar or worse occurrence may well happen upon retrial. *Id.*

■■ In the case at bar, we cannot hold that the trial judge abused his discretion in denying the drastic remedy of a mistrial. There is nothing in the record to contradict the judge's conclusion that this was a spontaneous outburst. Given the nature of the crime committed upon the witness, it is quite probable that she would have a similar reaction at a later trial when required to recall the details of this devastating event. Appellant also condemns the delay in extricating the jury from the room, but we cannot hold, based on the record, that there was an inordinate lapse of time. Some delay was certainly necessary to determine if the witness would desist or continue crying. The point is denied.

Appellant's fourth point claims the trial court erred in entering five separate judgments and sentences for rape because the

incident involved a continuing assault, not separate and distinct assaults.

■■■ Rape is generally not a continuing offense; each act of intercourse is a distinct and separate offense. *State v. Dennis*, 537 S.W.2d 652, 654 (Mo.App.1976). The facts of each case will determine whether there has been a single assault or multiple rapes, including the factors of time, place and defendant's intent. *Vaughan v. State*, 614 S.W.2d 718, 722 (Mo.App.1981). Defendant's intent is the preeminent factor. *Id.* The rationale behind this law is that:

> One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.

*Harrell v. State*, 88 Wis.2d 546, 277 N.W.2d 462, 469 (1979). Cited with approval in *Vaughan*, 614 S.W.2d at 722–23.

Appellant argues that under these rules of law there was only one chargeable act of rape. He puts heavy emphasis on the fact that there is no evidence as to how much time passed between the acts of intercourse nor is there evidence of renewed threats. Appellant cites to *State v. Dennis*, 537 S.W.2d 652 (Mo.App.1976), where defendant raped victim in one county then drove to another county and raped her a second time, and to *Vaughan v. State*, 614 S.W.2d 718 (Mo.App.1981), where the separate rapes took place in the same location but there were 25 to 55 minute intervals between the acts during which defendant engaged victim in extended conversation. Because the instant case did not involve relocation or a long period of time and conversation between the rapes, appellant claims that separate rapes did not occur.

Other cases, however, have found separate sexual assaults in situations closer to the one at bar. In *State v. Davis*, 624 S.W.2d 72, 77 (Mo.App.1981), separate acts of sodomy existed when each act was sepa-

rated by an act of natural intercourse. In *State v. Mudd*, 703 S.W.2d 63, 66–67 (Mo. App.1985), the fact that the two separate acts of sodomy occurred at the same location in a relatively short period of time did not prevent separate judgments where each act was of "sufficient individual identity."

■ The case at bar admittedly has a dearth of facts concerning the rapes when compared with *Vaughan* and *Dennis*, but there is sufficient evidence to prove separate acts of rape. The victim's ordeal lasted approximately two and a half to three hours. During this time, appellant had intercourse with her five times with "some time" passing after each act. After the first and second acts, appellant forced victim to masturbate him. After the third act, victim became ill and vomited. There is a lack of detail in this recitation, but the evidence is sufficient to grant each act an individual identity and to show that each act further denigrated the victim's integrity.

■ The fact that appellant failed to state his intention to commit a new act is immaterial in light of the evidence already showing the separate identity of each act. A silent rapist is no less culpable than a gregarious rapist. Similarly, the absence of a new verbal threat before each act is immaterial. Appellant, who was five foot eleven inches tall and weighed 170 pounds, had already threatened victim with physical harm, had roughly handled her and had placed her in a situation where she was completely under his control. The jury could easily have found from this circumstantial evidence that the victim was threatened into submitting to each separate act. Finally, defendant's intent is the controlling factor. The facts of this case more reasonably support a finding that appellant formed a separate intention to commit each act of rape than that he formed one intention to rape which just happened to include five acts. Under the applicable law and the facts of this case, there was no error in holding appellant guilty of five separate acts of rape.

In his fifth point, appellant claims the trial court erred in denying him the right to proceed pro se and in forcing him to trial with an attorney with whom he had irreconcilable differences. These problems stemmed from two sources. First, appellant complained that counsel refused to call witnesses who apparently would only serve to impeach the prosecuting witness. Counsel stated that none of the witnesses identified by appellant had relevant testimony. Second, appellant was upset at counsel for mentioning that he was charged with rape when counsel discussed the plea bargain with appellant on the catwalk in the jail. Appellant claims other inmates heard these remarks. Three weeks prior to trial, appellant filed a motion asking to proceed pro se. The court addressed this motion when the case was called for trial. After questioning appellant, he denied the motion due to the serious nature of the charges against appellant.

■ Under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), a criminal defendant has the right to proceed pro se when he voluntarily and intelligently elects to do so. A defendant's request must be unequivocal to invoke the right. *State v. Freeman*, 702 S.W.2d 869, 871 (Mo.App.1985). Such a request is not considered unequivocal where the defendant merely states that he would prefer to represent himself rather than accept the aid of his appointed attorney, but would like another attorney appointed who meets his standards. *State v. Williams*, 716 S.W.2d 452, 453 (Mo.App.1986). "An indigent defendant cannot specify who his attorney shall be." *Id.*

■ That is precisely the situation in the case at bar. The record clearly shows that appellant did not really wish to proceed pro se; he merely did not wish to proceed with his particular appointed counsel. This is not an unequivocal request for self-representation. We also note that the record reveals the differences were only on appellant's part; counsel held no grudge against appellant nor did his actions of which appellant complains appear to be culpable.

Appellant's final point on direct appeal concerns issues actually and correctly raised in his separate brief on the denial of his Rule 29.15 motion. We will address the issues in this point in the discussion of those points relied on.

## II

■■■■■ Concerning the appeal from the denial of appellant's Rule 29.15 motion, we first note that the amended motion was filed out of time. Rule 29.15(f) allows a maximum of 60 days after counsel is first appointed, or from the date counsel enters an appearance if not appointed, to file an amended motion. This time limit is mandatory, *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), and motion courts have no authority to extend the time limit, *Batson v. State*, 774 S.W.2d 882, 884 (Mo.App. 1989). Where a public defender and contract counsel both appear on a case and there is both a date of appointment and a date for entry of appearance, the time begins to run at the earlier date. *Schneider v. State*, 787 S.W.2d 718 (Mo.1990).

■■■■■ Counsel was first appointed in this case on March 3. Consequently, appellant's 60 day time limit expired on May 2 despite the court's attempt to extend the filing time to May 10 and the amended motion was untimely filed. Because the ambiguity in Rule 29.15 was not resolved by the Supreme Court until the recent *Schneider* opinion and because this case was decided prior to *Schneider*, we will follow the Supreme Court's lead and review all of appellant's points. *Id.* at 2.

Point I claims the motion court erred in not holding that counsel was ineffective in making his closing argument. During his argument counsel expressed contempt for his client, calling him a jerk and a fool. He also denigrated the victim by calling her a street rat. At the evidentiary hearing, counsel explained that he was attempting to create the impression that appellant was an innocent man being victimized by the legal system and that the comments about appellant were an attempt at reverse psychology. Counsel stated that his remarks

about the victim were designed to reduce her credibility. The motion court held that the closing argument was trial strategy.

■■■■■ Appellate review of the judgment in a Rule 29.15 proceeding is limited to a determination of whether the decision of the motion court is clearly erroneous. Rule 29.15(j). In making this determination, the appellate court must defer to the motion court's determination as to credibility of witnesses. *Eddes v. State*, 776 S.W.2d 463, 464 (Mo.App.1989). In allegations of ineffectiveness of counsel, there is a strong presumption that counsel exercised reasonable professional judgment in making his decisions. *Mitchell v. State*, 750 S.W.2d 733, 735 (Mo.App.1988). The allegation that counsel gave an ineffective closing argument is a matter of trial strategy which does not provide a basis for post-conviction relief. *Lytle v. State*, 762 S.W.2d 830, 834 (Mo.App.1988).

■■■■■ Given the presumptions we operate under and the appropriate standard of review, we cannot disturb the motion court's decision that counsel's comments, taken in context, reflect trial strategy. As such, these statements are not grounds for relief under Rule 29.15.

■■■■■ Appellant's second point concerning his Rule 29.15 motion is that the motion court erred in not finding trial counsel ineffective for failing to present evidence that the scar on appellant's forehead came from a 1977 car accident, not from victim's bite. At the evidentiary hearing, trial counsel explained that he did not seek to obtain army records concerning the scar because he did not feel it was an important element. As for the apparent inference that victim's bite caused the scar, counsel stated it was obvious the scar was old. The motion court accepted this rationale, holding that there was no ineffective assistance and that there was no prejudice.

To prove ineffective assistance of counsel, a post-conviction relief movant must show that counsel's performance fell below a reasonable level and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984). Generally, defense tactics are a matter of trial strategy and will not support a claim of ineffective assistance. *Jackson v. State,* 729 S.W.2d 253, 255 (Mo.App.1987). Counsel's decision to forego investigation of an evidentiary matter must be evaluated for reasonableness under the circumstances with great deference to counsel's judgment. *Armour v. State,* 741 S.W.2d 683, 689 (Mo.App.1987).

Under these standards, we cannot hold the motion court erred in accepting counsel's explanations. The record does not reflect the appearance of appellant's scar nor does it indicate that at the time of the trial, approximately a year after the event, the assailant would still bear the visible signs of victim's bite. In addition, the motion court correctly found that the absence of this evidence did not prejudice appellant. In light of the victim's strong identification of appellant, evidence that her bite did not cause the scar would not likely have changed the outcome of the trial. Point denied.

■■■ Appellant next claims ineffective assistance because counsel failed to call appellant's girlfriend and brother as witnesses. The brother testified at the evidentiary hearing that he saw appellant at work no later than 8:30 a.m. He stated that he often stopped by appellant's place of employment on the way to his own job, where he was due between 10:00 a.m. and 11:00 a.m. and that he remembered he stopped this day because his brother's future was at stake. The girlfriend, who was also the mother of appellant's two children, testified that on the day of the crime appellant drove her red Nova, not his rust van. Trial counsel testified that he was aware of these witnesses and their possible testimony, but did not feel they would help appellant's case. The motion court accepted counsel's explanation and further held that he did not believe the brother's testimony nor did he think the girlfriend would have been a helpful witness.

Counsel's decision to not use a witness is a virtually unchallengeable matter of trial strategy. *Sanders v. State,* 738 S.W.2d 856, 858 (Mo. banc 1987). Such a decision

is especially supportable where the possibility exists that an alibi has been fabricated or that the witness will present perjured testimony. *Berry v. State,* 759 S.W.2d 247, 249 (Mo.App.1988).

This is precisely the situation in the case at bar. Both witnesses had a motive to commit perjury and their testimonies contain certain inconsistencies. The motion court did not err in finding counsel effective despite his failure to use these witnesses.

■■■ Point IV argues that counsel was ineffective for failing to maintain an objection to the victim's inability to identify appellant in court. Appellant claims the victim initially pointed at someone else and only pointed at appellant after the prosecutor coached her. At the evidentiary hearing, appellant presented a city Deputy Sheriff who witnessed the trial and who testified he did not think the victim ever identified appellant. The motion court found that the trial transcript contradicted the deputy's testimony and did not support appellant's claims. We agree. The record does not indicate any ineffective assistance of counsel.

■■■ Point V concerns the motion court's denial of appellant's claim that he received ineffective assistance of counsel because counsel "put movant's safety in jeopardy by identifying the fact that movant was charged with sexual offenses within the hearing of other inmates." This claim is clearly not a proper claim of ineffective assistance. Under *Strickland,* counsel's actions must have prejudiced movant's defense to warrant post-conviction relief. 466 U.S. 668, 104 S.Ct. 2052. Appellant does not describe how this action, even if it was improper, affected his trial nor does he cite any authority stating that such action warrants post-conviction relief.

■■■ Appellant's next point claims counsel was ineffective for failing to obtain army records concerning appellant's blood type or to have an independent blood test. As the motion court pointed out, appellant refused to have his blood tested. In addi-

tion it is reasonable for counsel to forego evidence of blood type where the possibility exists that the evidence may harm the defendant. *McDonald v. State,* 758 S.W.2d 101, 107 (Mo.App.1988).

Prior to trial this state of facts existed. Counsel addressed the discrepancy in appellant's actual blood type and Joseph Crow's testimony in the post-trial motion. These were the actions of a reasonable, competent attorney and not grounds for a claim of ineffective assistance. In addition, as the motion court and trial court both noted, there is no indication that evidence of appellant's true blood type would have changed the outcome of the trial.

▆▆▆▆ Appellant's next point, VII, claims the state violated his Sixth Amendment rights to confrontation and a fair trial and his Fourteenth Amendment due process right because it failed to preserve the semen stain for further testing. Police failure to preserve evidence does not violate due process absent a showing of bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). The motion court found there was no evidence the state intentionally failed to preserve the stain. We agree.

▆▆▆ Appellant also challenges, in his point VIII, the motion court's conclusion that the decision to run the sentences consecutively was a matter of law for the trial court to decide. Appellant had claimed that the court erred in holding that the sentences had to run consecutively under section 558.026.1, RSMo 1986. That statute holds that:

> Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offense committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.

Appellant relies on the Western District case *State v. Webb,* 737 S.W.2d 197 (Mo. App.1987). He argues that *Webb* held sentences for multiple sexual offenses need not run consecutively; thus the trial court operated under a misconception and the cause should be remanded for resentencing.

In *Webb,* the defendant was found guilty of three counts of sodomy but not of any non-sexual offenses. In determining whether the sentences should be served concurrently or consecutively, the court examined earlier cases which held that all sex crimes committed at the same time must carry consecutive sentences. *State v. Toney,* 680 S.W.2d 268, 273 (Mo.App.1984); *Adams v. State,* 688 S.W.2d 401, 402 (Mo. App.1985); *State v. Blockton,* 703 S.W.2d 500, 507 (Mo.App.1985); *State v. Shaw,* 701 S.W.2d 514, 517–18 (Mo.App.1985). The court questioned the reasoning of these earlier cases and conducted its own examination of section 588.026.1. The court concluded that the statute "requires that consecutive sentences be given only for sex crimes when a rape or sodomy ... is committed at the same time as a crime not involving rape or sodomy." 737 S.W.2d at 201.

A later Western District case, *State v. Bland,* 757 S.W.2d 242, 246 (Mo.App.1988), reads *Webb* to hold that when multiple sex crimes are committed at the same time as a non-sex crime, the multiple sex crimes must carry consecutive sentences.

In *State v. Blockton,* 703 S.W.2d 500 (Mo.App.1985), this court held that a defendant convicted of five counts of rape and one count of kidnapping, all committed at the same time, should have received consecutive sentences. Upon a second appeal after remand, which was decided after *Webb,* this court re-affirmed that conclusion. *Blockton v. State,* 741 S.W.2d 786, 787 (Mo.App.1987).

At present, the Eastern and Western districts hold different interpretations of section 558.026.1. *See State v. Burgess* (Mo. App. E.D. # 56265 Slip Op. April 24, 1990). In both districts, however, multiple sexual offenses must run consecutively when they were committed at the same time as a non-sexual offense. Thus, under the law in either district, the trial court correctly imposed consecutive sentences on the rape counts as well as on the kidnapping count.

Point IX, which is the final point before this court, claims the motion court erred in failing to rule on certain challenges to counsel's failure to object at trial. Although Rule 29.15(i) requires findings of fact and conclusions of law on all issues, general findings are sufficient if they allow meaningful appellate review. *Seltzer v. State*, 694 S.W.2d 778, 779 (Mo. App.1985). In the case at bar, the motion court held that "all of the alleged omissions and errors individually and collectively did not deprive movant of his right to effective and loyal counsel nor of due process" and that even if he accepted the allegations of ineffectiveness, he found no prejudice. Appellant's brief fails to rebut these findings as they apply to the failures to object and we fail to see that objections would have been successful or affected the outcome of the trial. The point is denied.

The judgments of both the trial court and the motion court are affirmed.

SIMON, C.J., and SIMEONE, Senior Judge, concur.