**STATE of Missouri, Appellant,**

v.

**Ricky E. STONE, Respondent.**

**WD 47901.**

Missouri Court of Appeals,
Western District.

Jan. 25, 1994.

---

John S. Newberry, Asst. Pros. Atty., Clay County, Liberty, for appellant.

Kurt H. King, Liberty, for respondent.

Before TURNAGE, P.J., and HANNA and ELLIS, JJ.

ELLIS, Judge.

Ricky Stone was charged by information with forgery, § 570.090.1(4), RSMo 1986, a class C felony. Trial was held on March 15 and 16, 1993, and a Clay County jury found him guilty as charged. Stone then timely filed a motion for new trial on the ground of newly discovered evidence. After a series of hearings, the trial court granted Stone's motion, and the State appeals. We affirm.

In its sole point relied on, the State argues the trial court erred in sustaining Stone's motion for new trial based upon newly discovered evidence because Stone failed to prove he was entitled to such relief. The case involved a forged check (check number 1061) drawn on an account held by Robert Bears at Clay County Savings and Loan. The new evidence consists of a Forensic Laboratory Report prepared on March 2, 1993, by the Criminal Laboratory Division of the Missouri State Highway Patrol. It states that Specimen Q1, which consisted of seventeen checks, including check number 1061, was processed for fingerprints and submitted to an analyst for evaluation. This examination "revealed latent prints that can be used for identification purposes." Those prints were then compared against the "Missouri State Highway Patrol 10-print file," which contains the fingerprints of Missouri felony arrestees. Although Stone had twice been arrested on Missouri felony charges, this search "yielded negative results." The report also contains the results of a handwriting analysis. After comparing the writing on the seventeen checks with handwriting exemplars obtained from Stone and a co-defendant, the analyst concluded: "The known exemplars contain a limited amount of comparable writing features, however, there are indications that [the co-defendant] may have written the questioned material."[1]

■ Trial courts are "vested with substantial discretion in deciding whether a new trial should be granted because of newly discovered evidence." *State v. Williams*, 652 S.W.2d 102, 114 (Mo. banc 1983). To qualify for a new trial on the basis of newly discovered evidence, a defendant must establish each of the following four elements:

---

1. Before he granted Stone's motion for new trial, the trial judge requested that the State ask the Highway Patrol crime lab to perform additional tests on check number 1061. The results of this analysis are contained in a second report dated May 3, 1993. According to this report, check number 1061 was examined and found to have latent prints. The inked fingerprints of both Stone and the co-defendant were then compared to those found on the check, but in neither case was there a match.

(1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that it was not discovered sooner; (3) the evidence is so material that it would probably produce a different result on a new trial; and (4) it is not cumulative only or merely impeaching the credit of the witness.

*Id.* The trial court's determination as to whether the defendant's proof of these four elements is sufficient rests within its sound discretion. *State v. Ervin*, 723 S.W.2d 412, 418 (Mo.App.1986). Accordingly, a trial court's ruling on a motion for new trial on the ground of newly discovered evidence will not be reversed on appeal absent a showing that discretion has been abused. *Id.* Finally, it has long been the rule in civil cases that "[w]hen the trial court has *sustained* the motion for new trial, the appellate court is more liberal in upholding its action than when the trial court has *denied* [such] relief." *Cook v. Cox*, 478 S.W.2d 678, 682 (Mo.1972) (emphasis added); *Hyde v. Butsch*, 861 S.W.2d 819, 820 (Mo.App.1993). This rule is equally applicable in criminal cases.[2]

■ The State concedes that Stone first heard about the lab report on the morning of March 30, 1993, some two weeks after trial.[3] Stone argues that his failure to learn of the report any sooner was not due to any lack of diligence on his part, but the State's failure to comply with paragraph five of his March 3, 1992, request for discovery, which compelled the State to produce "[a]ny reports or statements of experts made in connection" with his case, "including results of ... scientific tests, experiments, or handwriting or other comparisons."[4] We agree.

The State contends that its failure to produce the report was excused and Stone was put on notice of its possible existence when,

during a bench conference at trial, Stone's attorney agreed to allow Assistant Prosecuting Attorney John Newberry to introduce copies of the checks into evidence after Newberry said the originals were "subject to an ongoing fingerprint examination situation [sic]." This contention has no merit. Merely mentioning that a fingerprint examination may have been "ongoing" did not apprise Stone that an analysis of the fingerprints *and the handwriting* on the checks had already been conducted and that a lab report had been completed and filed some two weeks before trial. In addition, it was proper for Stone to assume that if such a report existed, he would already have received a copy pursuant to paragraph five of his discovery request. Because Stone's inability to obtain a copy of the lab report any sooner than he did was caused primarily by the State's failure to fulfill its legal obligation to provide him with one on a timely basis, not any lack of diligence on his part, the trial court did not abuse its discretion in finding that Stone met the due diligence requirement for his newly discovered evidence.

■ Next, the State argues Stone failed to prove that the report would probably produce a different result on retrial. To satisfy this requirement, the newly discovered evidence need only be "credible and reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result in the event of a new trial." *State v. Jennings*, 326 Mo. 1085, 1094, 34 S.W.2d 50, 54 (1930). The lab report meets the standard enunciated in *Jennings*. The report is clearly material evidence because it tends to prove that Stone did not "transfer" check number 1061, an element of the offense charged. It is also credible evidence tending

---

**2.** The parties did not cite (and we were unable to find) a single reported Missouri criminal case in which the State appealed a trial court's order granting a motion for new trial on the basis of newly discovered evidence.

**3.** The co-defendant found a copy of the report in the files of the Liberty Police Department a day or two earlier. The record does not show when the Liberty Police Department received it from the Highway Patrol crime lab, but we do know as of March 30, 1993, the report had not been

forwarded to the Clay County Prosecutor's Office.

**4.** The State admits that the lab report is within the scope of Stone's discovery request and explains that he was not given a copy because the prosecution didn't even know there was a report (exculpatory or otherwise) until March 30, 1993. Nevertheless, the State is ultimately responsible for the Liberty Police Department's inadvertent or negligent failure to send a copy to the Clay County Prosecutor's Office in a timely manner.

to prove he did not write or sign the check, which goes to the questions of whether Stone "knew that [check number 1061] had been made so that it [appeared to be genuine]" and whether he acted "with the purpose to defraud." The newly discovered fingerprint and handwriting evidence contained in the laboratory report is sufficient to raise a substantial doubt in a reasonable person's mind as to the outcome of a new trial. Indeed, as our Supreme Court has observed:

> Of course, if it be clear that the new evidence will have no effect upon another verdict, the motion for a new trial should be denied; but, if it be doubtful how the evidence would affect the result, the motion should be granted. The court, in such cases, should not attempt to pronounce for the jury in advance, but should give them an opportunity to pass upon the evidence, if competent and material, and to determine its weight for themselves.

*State v. Bailey*, 94 Mo. 311, 316, 7 S.W. 425, 427 (banc 1888) (citing 3 David Graham & T.W. Waterman, *A Treatise on the Law of New Trials in Cases Civil and Criminal* 1044 (2d ed. 1855)).

The State, citing *State v. Hamilton*, 791 S.W.2d 789 (Mo.App.1990), and *State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988), contends that the other evidence of Stone's guilt in this case was so strong that the lab report would make no difference to the jury. In *Hamilton*, a rape and kidnapping case, trial testimony about Hamilton's blood type showed him to be within the 61% of the male population who could have committed the rape. Before the sentencing hearing, new blood tests were performed, revealing that any male could have committed it. In upholding the trial court's denial of Hamilton's motion for new trial, the court noted that because the victim had been raped five times by her attacker and was in his immediate presence for well over two hours, her eyewitness testimony identifying Hamilton as the perpetrator was particularly strong. *Hamilton*, 791 S.W.2d at 793–94.

In *Amrine*, a first degree murder case, the newly discovered evidence consisted of three exculpatory letters allegedly written by Randy Ferguson, one of the State's witnesses against Amrine, to a third party, Robert Arnold. At a hearing on Amrine's motion for new trial, Ferguson acknowledged writing the first letter, but denied he had written the others and reaffirmed his trial testimony identifying Amrine as the killer. The letters were analyzed by two handwriting experts, whose testimony conflicted as to whether Arnold or Ferguson might have been the author of the last two letters. On appeal, the Court upheld the trial court's denial of Amrine's motion for new trial, explaining it was unable to "say that the [newly discovered] evidence would produce a different result at a new trial." *Amrine*, 741 S.W.2d at 675.

Neither *Hamilton* nor *Amrine* is applicable to the case at bar. Here, unlike in *Hamilton*, the newly discovered evidence uncovered by Stone was highly exculpatory. Furthermore, the eyewitness testimony against Stone was not nearly as strong as that against Hamilton.[5] Additionally, the authenticity of the handwriting evidence in this case was not closely challenged as it was in *Amrine*.[6] Therefore, the trial court did not abuse its discretion in concluding that Stone met his burden of proof on the materiality requirement for the newly discovered evidence.

In its final argument, the State contends the report merely impeaches the credibility of the witnesses who testified against Stone at trial. It cites *State v. Henderson*, 708 S.W.2d 206 (Mo.App.1986), for the proposition that when the State does not present fingerprint evidence at trial, newly discovered fingerprint evidence, standing alone, has no probative value and merely impeaches the

---

**5.** For instance, Florence Lawyer, the sole witness directly linking Stone to check number 1061, observed him only briefly on a few occasions. Another one of the State's eyewitnesses, Susann Cox, apparently told police the perpetrator was 5'7'' tall and of medium build. However, Stone is 6' tall and weighs 220 pounds.

**6.** We also note that the motions for new trial in *Hamilton* and *Amrine* were *overruled* by the trial court. Here, since the trial court *sustained* Stone's motion for new trial, we are more liberal in upholding its action.

identifications made by prosecution witnesses. However, the newly discovered evidence in this case does not consist solely of unidentified fingerprints. It also includes the results of a handwriting analysis tending to exculpate Stone. Hence even if *Henderson* is read as broadly as the State insists, it cannot dictate the result in this case. The newly discovered fingerprint and handwriting evidence goes directly to the principal issue in this case: the identity of the person who forged check number 1061. It is not, therefore, merely impeachment evidence and can justify a new trial. *See State v. Kyle,* 259 Mo. 401, 413, 168 S.W. 681, 684 (1914) (newly discovered evidence which was partly cumulative and partly impeachment held sufficient to justify new trial since it went "to the vital question as to who caused the condition" in which the crime victim was found); *State v. Murray,* 91 Mo. 95, 104, 3 S.W. 397, 400 (banc 1887) (although the newly discovered evidence would have the effect of impeaching or contradicting a prosecution witness, motion for new trial was granted because the evidence had "the further tendency to show that one of the main things relied on by the prosecution to fix guilt on the defendant" was false).

■ We are mindful of that line of cases which hold that the State has no obligation to search for fingerprints and therefore, the defense may not draw an unfavorable inference from the lack of fingerprint evidence in argument. *State v. Wiggley,* 515 S.W.2d 791, 792 (Mo.App.1974); *State v. Terry,* 472 S.W.2d 426, 430 (Mo. banc 1971); *State v. Holmes,* 389 S.W.2d 30, 34 (Mo.1965). We readily affirm the rule enunciated in those cases, and nothing herein should be construed as questioning its continued viability. Our decision today merely acknowledges the rule that "evidence of the correspondence or lack of correspondence of fingerprints, when testified to by an expert witness, is admissible to establish identity in criminal proceedings." *State v. Phillips,* 511 S.W.2d 841, 844 (Mo.1974). In this case, the newly discovered evidence reveals the availability of expert fingerprint testimony which may be used in the new trial.

In reviewing a criminal trial court's grant or denial of a new trial on the ground of newly discovered evidence, "[e]ach case must be determined upon its own facts." *State v. Mahood,* 177 S.W. 371, 372 (Mo.1915). On the facts present here, the trial court did not abuse its discretion in granting Stone's motion for new trial. Accordingly, we affirm its judgment.

All concur.