STATE of Missouri, Appellant,

v.

Scott Edward BROWN, Respondent.

No. 73538.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 17, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson, for appellant.

Bradford Kessler, Clayton, for respondent.

RICHARD B. TEITELMAN, Judge.

Scott Edward Brown ("Defendant") was found guilty by a jury of murder in the first degree, Section 565.020.1, RSMo 1994, in the Circuit Court of St. Charles County. Defendant filed a Motion for New Trial. The trial court, the Honorable Donald E. Dalton, issued an order granting Defendant's Motion. The State appeals pursuant to Section 547.200.2, RSMo 1994.

We reverse the trial court's Order granting the Motion for New Trial and remand the case to the trial court with instructions to enter judgment and sentence according to the jury's verdict.

### Factual and Procedural Background

◼ After a jury has rendered a verdict of guilty, this Court considers the evidence in the light most favorable to the verdict. *State v. Schuler*, 838 S.W.2d 19, 20 (Mo.App. E.D. 1992); *State v. Couch*, 793 S.W.2d 599, 601 (Mo.App. E.D.1990).

Rebecca Brown ("the victim") was strangled at her home at 412 Boone Street on the morning of January 14, 1992. Defendant, the victim's husband, was convicted of her murder. One of Defendant's neckties may have been the murder weapon.

At the time of the murder, a man wearing clothing similar to Defendant and walking toward a car resembling Defendant's was seen near the scene of the murder. In March 1991, Defendant, having forged his wife's signature and overstating her income, purchased a $200,000 life insurance policy naming himself as beneficiary. Two and one-half months before the victim's murder, Defendant increased the coverage to $250,000. While awaiting trial, Defendant indicated to John Conway, another inmate, that he was hostile toward the victim and called her a murderer because she had had an abortion.

After the jury found him guilty of his wife's murder, Defendant filed a Motion for New Trial raising numerous points of error. On grounds unrelated to Defendant's points of error, Judge Dalton, stating several grounds, entered an Order granting Defendant's Motion for New Trial.

### Discussion

◼ The trial court has broad discretion in determining whether or not to grant a motion for new trial. On review, we will affirm the trial court unless its action was a clear abuse of discretion. *State v. Stone*, 869 S.W.2d 785, 789 (Mo.App. W.D.1994). The State argues that the trial court erred and abused its discretion because the basis for the court's ruling is without factual or legal support in the record. We agree.

In his Order granting Defendant's Motion for New Trial, Judge Dalton determined that the State had barely made a submissible case, and that this was evidenced by the length of the jury's deliberation. He stated that all of the evidence presented, except the evidence presented by the testimony of John Conway and James Helmig, pointed to two equally valid inferences. Additionally, he determined that John Conway's testimony was "suspect," and stated three reasons why he felt Conway was not a credible witness: the fact that he was a convicted felon, the fact that he had made a "deal" with the State, and the fact that his demeanor during his testimony indicated he was biased against Defendant. Finally, Judge Dalton stated that Conway's testimony was "unresponsive," "self serving," and "bolstering of his own testimony," and also challenged Defendant to testify.

◼ The trial court's reasons for granting

the Motion are not supported by the record.[1] First, the trial court's determination that the length of jury deliberations is indicative of an alleged weakness in the State's case is mere speculation. Nothing in the record indicates the jury reported an interim deadlock during deliberations or that a "hammer instruction" was ever given because the trial court was concerned that the jury was experiencing difficulty in reaching a verdict. See, e.g., *State v. Jones,* 545 S.W.2d 659, 665–66 (Mo. App. E.D.1976). The amount of time it takes for a jury to deliberate is irrelevant. Given the length of the trial, the extensive evidence presented, and the seriousness of the offense charged, this Court does not consider eleven hours of deliberation excessive in this case.

Additionally, the equally valid inference rule has been abolished in Missouri. See, *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998); *State v. Grim,* 854 S.W.2d 403, 413–14 (Mo. banc 1993). Therefore, a reliance on the evidence supporting "two equally valid inferences" is improper.

Finally, John Conway's testimony does not provide a basis for granting a new trial. The trial court first stated that Conway's testimony was "suspect" for three reasons: (1) his prior conviction can be used to "impugn his credibility," (2) his "deal" with the State can be used to "impugn his credibility," and (3) his obvious bias against Defendant as evidenced by his statements and manner while testifying.

 The interest or bias of a witness is always relevant. *State v. Edwards,* 637 S.W.2d 27, 29 (Mo.1982); *State v. Bounds,* 857 S.W.2d 474, 476, (Mo.App. E.D.1993). "Facts and circumstances that show bias may be shown either by cross-examination of the witness sought to be impeached or by extrinsic evidence." *State v. Buckner,* 929 S.W.2d

795, 799, (Mo.App. W.D.1996), citing *State v. Foster,* 854 S.W.2d 1, 4 (Mo.App. W.D.1993).

In the case at bar, Conway testified regarding a prior conviction in California and to his guilty plea to charges of resisting arrest and assault of a police officer in Missouri. On cross-examination, Conway admitted to trying to work out a "deal" with the State in return for his testimony, including his initial request to be transferred to another prison and the early release from prison that he actually received.

 The jury was aware of Conway's criminal convictions, his "deal," and was also in a position to determine if Conway had an "obvious bias" against Defendant. Defendant was granted broad latitude in cross-examining Conway. The record indicates the State did not object to defense counsel's asking questions to impeach Conway, nor were there any objections to the answers to these questions. Credibility is in the province of the jury and it may believe all, some, or none of the witnesses' testimony in arriving at its verdict. *State v. Jeffries,* 858 S.W.2d 821, 824 (Mo.App. E.D.1993).

The trial court also stated that Conway's testimony included statements that were unresponsive, self-serving and bolstering, and that Conway challenged Defendant to testify.

Unresponsive answers in and of themselves are not improper unless the testimony itself is improper in some way. None of Conway's responses were in and of themselves inadmissible. In some instances, there was admonishment by the court that he should only speak when a question was asked of him or that he should answer questions and not volunteer information. Conway made only one unresponsive remark that the trial court instructed the jury to disregard, and that remark did not refer to Defendant.[2]

---

1. The claim that the "credible evidence produced by the state reached the level sufficient to make a case submissible to the jury only be (*sic*) the narrowest of margins" will not be discussed in this opinion because issues involving the sufficiency of the evidence may be raised by Defendant in a subsequent appeal of his conviction. Sufficiency of the evidence is not at issue in the appeal at bar.

2. Defense counsel, on recross examination, questioned Conway about the sexual preferences of his friend, James Helmig, another of the State's witnesses, and apparently began to inquire about the nature of Conway's relationship with Helmig. Defense counsel immediately withdrew the question, at which time Conway stated "That was an ugly remark, though." At that time, and at no other, the trial court instructed the jury to disregard Conway's statement.

■ Additionally, Conway's statements do not fit the definition of "bolstering" as used by Missouri courts. In *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), the Missouri Supreme Court held that "bolstering" is improper, stating "[w]hen a witness testifies from the stand, the use of duplicating and corroborative extrajudicial statements is substantially restricted." *Id.* at 441. Thus, the introduction of a witness' deposition testimony if the witness testifies at trial would be improper. *Id.* However, this does not apply where a witness testifies at trial and other evidence on the same subject is admitted either through a written statement or through the oral testimony of other witnesses. *State v. Wright*, 751 S.W.2d 48, 53 (Mo. banc 1988).

In the case at bar, Conway testified in person and none of Conway's previous extrajudicial statements were admitted into evidence. At one point, the State asked Conway if he had written his attorney some letters. Though Conway testified in the affirmative, the State did not admit the letters into evidence. Thus, Conway's testimony was not "bolstering."

Further, Conway's statements did not challenge Defendant to testify. Though the trial court does not directly refer to the testimony that allegedly challenged Defendant, a careful scrutiny of the trial transcript reveals only two statements that could possibly be construed in this manner. The following occurred during Conway's testimony on cross-examination by defense counsel:

Q: So let's be clear on this, a lot of the stuff that you base your testimony on are things that [Defendant] doesn't even know about, correct?

A: He doesn't know about the notes, of course not.

Q: Or your legal or medical or whatever kind of conclusions?

A: He knows the answers I gave, he is quite aware of what I said is true. I will look at him, I will do that.

Q: Let's do that?

A: Let's do that.

In this instance, Conway did not invite Defendant to testify. He stated that he had made certain conclusions from the evidence he saw and that those conclusions were true.

Later, during Conway's testimony on cross-examination by defense counsel, the following occurred:

Q: Did you ever remember telling [Defendant], I know an awful lot about the law. I have been through this several times in the past?

A: Those are your words, not mine.

Q: So you deny telling him that?

A: That's correct.

Q: In the presence of others?

A: That's correct.

Q: You denied telling him that if he didn't pay you to help on his case, you would help against him on his case?

A: No, I did not.

Q: [Defendant], at some point then on his own, decided you would be the guy to help him.

A: Yes, he did.

Q: He took one look at you and said, here is my savior, this is a guy who looks smart, apparently looks like he knows what he is doing and I think I will just approach anybody and you were the guy; is that how it happened?

A: You would have to ask [Defendant] why he selected me because I don't truly know.

Conway's statement is not an invitation for Defendant to testify but was merely stating that he did not know the answer to the question. At no point in his testimony did Conway challenge Defendant to testify or even refer to his right to not testify.

The reasons stated in the trial court's Order Granting Motion for New Trial are completely without factual and legal support in the record. We therefore find the trial court erred and abused its discretion in granting Defendant's Motion for New Trial.

Accordingly, we reverse the trial court's granting of the motion for a new trial and remand the case to the trial court with in-

structions to enter judgment and sentence in accordance with the jury's verdict.

Presiding Judge JAMES R. DOWD and Judge LAWRENCE G. CRAHAN concur.