**STATE of Missouri, Respondent,**

v.

**Ivory L. JOHNSON, Appellant.**

**No. 47123.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 9, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 11, 1984.

Thomas R. Motley, Public Defender, Tenth Judicial Circuit, Hannibal, Carla Wood Tanzey, Brett & Erdel, Mexico, for appellant.

John Ashcroft, Atty. Gen., Deborah Neff, Jefferson City, for respondent.

CRIST, Presiding Judge.

As their children watched, defendant stabbed his ex-wife five times in the front yard of her apartment. One wound sev-ered her aorta, causing her death. A jury convicted defendant of capital murder, rec-ommending life imprisonment without eligi-bility for probation or parole for fifty years. The trial court sentenced according-ly and defendant appeals. We affirm.

Defendant claims plain error taints his conviction in that the verdict directing in-structions for capital murder, murder in the second degree, and manslaughter did not require the jury to find defendant pos-sessed of a culpable mental state. See § 562.016, RSMo 1978; *State v. Green*, 629 S.W.2d 326 (Mo. banc 1982). Defendant failed to present this contention to the trial court in his motion for a new trial. Rules 28.03 and 29.11(d). Our review, therefore, is limited to determining whether a mani-fest injustice or miscarriage of justice has occurred. Rule 30.20.

■ The trial court submitted MAI-CR2d 15.02, 15.14 and 15.18 as it was obli-gated to under Rule 28.02(c). The capital murder instruction required the jury to find defendant caused victim's death by stab-bing her, intended to take her life, that defendant knew he was practically certain to cause victim's death, and that he coolly and fully reflected upon killing victim be-fore doing so. MAI-CR2d 15.02. We hold the instruction required the jury to find the defendant acted both purposely and know-ingly as those mental states are defined in § 562.016(2) and (3).

"A person 'acts purposely,' or with pur-pose, with respect to his conduct or to a result thereof, when it is his conscious ob-ject to engage in that conduct or to cause that result." Section 562.016(2). Since the instruction requires the jury to find defend-ant formed an intention to kill victim after cool and full reflection, the instruction sub-mits whether it was defendant's "conscious object to engage in that conduct." Fur-thermore, the instruction posits whether or not defendant knew he was practically cer-tain to cause victim's death. This issue of causation, submitted conjunctively with full reflective intent, also requires a finding of defendant's "conscious object to cause that

result." Therefore, the instruction adequately hypothesizes both defendant's conscious objective to engage in prohibited conduct, premeditated and deliberate murder, and defendant's conscious objective to cause a prohibited result, the victim's death.

Closely related, though defined separately, is the culpable mental state of "knowingly." "A person 'acts knowingly,' or with knowledge, (1) With respect to his conduct or to attending circumstances when he is aware of the nature of his conduct or that those circumstances exists; or (2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result." Section 562.016(3). By submitting defendant's intent to take the life of victim, the instruction requires a finding of defendant's awareness of the nature of his conduct. The instruction also closely tracks the wording of the statute itself by requiring the jury to find defendant "knew that he was practically certain to cause the death of [victim]." MAI–CR2d 15.02. While not a model submission, no plain error exists by reason of the capital murder instruction.

■■ The second degree murder instruction requires a finding that defendant caused victim's death while intending to cause serious bodily harm not done in a state of sudden agitation by unexpected acts or conduct of victim. MAI–CR2d 15.-14. The specific intention to do great bodily harm is a requisite element for conventional second degree murder. *State v. Mannon*, 637 S.W.2d 674, 679 (Mo. banc 1982). By submitting such intent, the jury must find it was defendant's conscious object to accomplish the result of great bodily harm, thus supporting the finding defendant acted purposely in causing victim's death. Section 562.016(2), *supra*.

■■ The definition of manslaughter does not include specific intent as a necessary element. Section 565.005, RSMo 1978; *State v. Boyer*, 646 S.W.2d 876, 879 (Mo. App.1983). MAI–CR2d 15.18 correctly submits the offense of manslaughter. *State v.*

*Boyer, id.; State v. Eldridge*, 564 S.W.2d 603, 606 (Mo.App.1978). Thus, we find no plain error by reason of the instructions submitted at defendant's trial.

Next defendant complains the trial court abused its discretion by denying a mistrial when the first witness for the state became hysterical while testifying. The witness was defendant's 16 year old daughter, an eyewitness to her mother's murder. The trial court specifically found the emotional outburst was neither feigned nor staged. The court called a recess immediately after the witness broke down.

During the recess the prosecutor informed the trial court the witness had an outburst shortly before trial. The witness felt badly about the death of her mother and by having to testify, she was forced to relive events extremely painful to her.

■■ The drastic remedy of mistrial is best used sparingly. Emotional outbursts have no place in a trial and are to be prevented as far as possible. Nevertheless, neither the trial court nor counsel possesses complete control over witnesses. In such situations, the trial court is necessarily invested with broad discretion in minimizing or eliminating the prejudicial impact of an hysterical witness.

■■ If reasonable minds can differ as to whether a mistrial should have been declared, the trial court's exercise of its discretion must be upheld. Of great importance in the present case is the trial court's conviction as to the genuiness of the witness' outburst. No claim is made that the prosecution was in any way at fault. If a mistrial had been declared, there was no assurance that something similar or worse would not happen on retrial. After the recess the witness completed her testimony without incident. Based on the foregoing we find no abuse of discretion in refusing to declare a mistrial. *See State v. Jackson*, 506 S.W.2d 424, 427–29 (Mo.1974); *State v. Olinghouse*, 605 S.W.2d 58, 70–71 (Mo. banc 1980). *Compare State v. Connor*, 252 S.W. 713, 722 (Mo.1923).

■■ Defendant argues his daughter should not have been permitted to testify victim had said, "I knew that's why you

came here, to kill me" after defendant had announced to victim his intention to kill her. We find the out-of-court statement properly admitted as an excited utterance. Defendant was physically assaulting victim and had just threatened to "kill this whore." Victim knew defendant possessed a knife. The life-threatening circumstances under which the statement was made indicate its trustworthiness. See *State v. Van Orman*, 642 S.W.2d 636, 638–39 (Mo. 1982); *State v. Rogers*, 585 S.W.2d 498, 504–05 (Mo.App.1979).

Defendant's fourth point claims the redirect testimony of his daughter exceeded the scope of the cross-examination and should have been excluded. Daughter, on redirect, was asked if defendant said anything else to victim other than he was going to kill her. Daughter testified defendant said if he couldn't have her, no one else would.

■■■ In order to reverse a criminal conviction, the error complained of must be found to prejudice defendant's case. See *State v. Williams*, 606 S.W.2d 254, 256–57 (Mo.App.1980). Assuming daughter's testimony exceeded the scope of cross-examination, it could not amount to reversible error because defendant allowed in, without objection, the very same testimony from defendant's son. Even if we found daughter's testimony should have been excluded, since the jury heard the complained of evidence later without objection, we find no prejudice in daughter testifying to defendant's admission on redirect examination.

■■ We deny without discussion defendant's point concerning the failure of the trial court to fire his lawyers. See *State v. Armstrong*, 624 S.W.2d 36, 38–39 (Mo.App.1981). Defendant was well represented at trial.

■■ Defendant says he was prejudiced by the prosecutor's peremptory strike of the lone black on the jury panel, causing defendant, a black, to proceed to trial with an all white jury. Nothing in the record shows the jury was not reasonably representative of the community in which the case was tried. Further, defendant did not object to the jury's composition until he filed his motion for new trial. No showing of systematic exclusion of an identifiable group in the community has been attempted. Without properly preserving the issue and making an adequate record, this court cannot rule in defendant's favor. *State v. Blair*, 638 S.W.2d 739, 753 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 *reh. denied*, 459 U.S. 1229, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

■■ Defendant's final point relied on contains seven allegations of error. No authorities are cited; no argument is put forward. The brief states the allegations of error are presented to this court to fulfill counsel's duty under *State v. Zeitvogel*, 649 S.W.2d 945 (Mo.App.1983). The United States Supreme Court recently held defense counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant. *Jones v. Barnes*, — U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly it was not necessary for defense counsel to raise these issues, not necessary for the State of Missouri to respond, and not necessary for this court to decide.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.