

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD35247
)
DAVID KEVIN HOLMAN, ) **Filed: March 5, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Jack A.L. Goodman

**<u>AFFIRMED</u>**

David Kevin Holman ("Defendant") appeals his conviction after a jury trial of first-degree murder and armed criminal action.[1] In three points, Defendant claims the trial court erred in: (1) failing to grant a mistrial after "an emotional outburst in the courtroom by the victim's daughter"; (2) admitting out-of-court statements Defendant's wife ("Victim") made to her sister regarding previous abuse Defendant had inflicted upon Victim; and (3) failing to *sua sponte* grant a mistrial based on what Defendant alleges

---

[1] Defendant received a sentence of life imprisonment without the possibility of parole, plus a consecutive sentence of 55 years for armed criminal action. *See* sections 565.020 and 571.015. Unless otherwise indicated, all statutory references are to RSMo 2000.

was improper rebuttal argument by the State.  Finding no merit in any of these claims, we affirm.

## The Evidence[2]

Defendant and Victim had been married for about three years when Defendant shot and killed her on December 10, 2013.  Defendant, who had a bullet wound to his upper arm, did not deny shooting Victim, but he claimed that he had done so in self-defense.  The State's theory of the case was that Defendant was an abusive husband who had killed Victim by shooting her in the back and then shooting himself in the arm in an attempt to support a self-defense claim.

Defendant dialed 9-1-1 shortly after midnight and reported a shooting at his residence.  When sheriff's deputies responded to the home, Defendant hand-motioned the deputies to join him in the bedroom.  When they did so, Defendant was standing over Victim, who was lying face-up on the bed.  Defendant appeared to be "frantic" and "upset," and he seemed to be "looking for a pulse."  The deputies could smell alcohol on Defendant's breath.  Defendant told the deputies that Victim had "shot [him] with a 40 caliber so [he] shot her with a 357."  Defendant added "that he should have ran but he didn't."

The deputies found a "40 caliber pistol under [Victim's] left elbow."  Two bags were on the bed.  One contained .40-caliber ammunition and other miscellaneous items. The other bag contained socks, undergarments, slippers, a purse with medicine and herbs, and "another single full metal jacket bullet."  Outside the home, a white SUV believed to belong to Victim was packed with bags of clothes, sleeping bags, and blankets.

---

[2] Our recitation of the evidence is as viewed in the light most favorable to the jury's verdict.  **State v. Olivas**, 431 S.W.3d 575, 577 n.3 (Mo. App. W.D. 2014).

2

Victim's sister ("Sister") testified that Victim had been trapped in an abusive relationship with Defendant and had tried to leave him several times. Sister said that Defendant had threatened and terrorized Victim with a gun, and Sister also read aloud to the jury a letter Victim had written to Defendant during one of their periods of separation. The letter recounted occasions on which Defendant had threatened to shoot Victim, to "blow [her] head off[,]" and pointed a gun in her face. Sister also testified -- this time over Defendant's objection -- about specific instances of physical abuse Victim had recounted to Sister, including times when Defendant had held a gun to Victim's face and threatened to blow her head off, drained gas from her tank to keep her from leaving, and repeatedly kicked her in the back after she had tried to leave him.

Defense counsel argued that Victim wanted to kill Defendant to inherit his farm. He challenged much of the State's evidence at trial regarding blood spatter and ballistics, along with the State's theory of who had been positioned where when the shots were fired. In his closing argument, defense counsel emphasized that law enforcement had significantly mishandled the investigation and that no one was taking responsibility for those errors. He urged the jury to "hold our law enforcement responsible for how they present cases like this[.]" After deliberation, the jury found Defendant guilty of both counts.

**Analysis**

*Point 1 – Outburst by Victim's Daughter*

Point 1 claims the trial court abused its discretion in overruling Defendant's request for a mistrial after Victim's daughter lunged toward Defendant's counsel table and said either "[L]et me at him" or "I'm going to get him[.]"

3

Whether an outburst by a spectator requires a mistrial is within the broad discretion of the trial court. *State v. Martin*, 525 S.W.2d 804, 810 (Mo. App. K.C.D. 1975); *State v. Wilson*, 826 S.W.2d 79, 82 (Mo. App. E.D. 1992). "We review the failure to grant a mistrial for abuse of discretion; we will reverse only if the ruling was so illogical, arbitrary, and unreasonable 'as to shock the sense of justice and indicate a lack of careful consideration.'" *State v. Blevins*, 385 S.W.3d 526, 528 (Mo. App. S.D. 2013) (quoting *State v. Norman*, 243 S.W.3d 466, 470-71 (Mo. App. S.D. 2007)).

> Where outbursts occur, the trial court may exercise broad discretion in minimizing or eliminating the prejudicial impact of an hysterical witness or gallery member. [*State v. Johnson*, 672 S.W.2d 160, 163 (Mo. App. E.D. 1984)]. In determining whether to declare a mistrial, the trial court may consider the spontaneity of the outburst, whether the prosecution was at fault, whether something similar, or even worse, could occur on retrial, and the further conduct of the trial. *See State v. Hamilton,* 791 S.W.2d 789, 795 (Mo.App.1990); *State v. Johnson,* 672 S.W.2d at 163.

*State v. Brooks*, 960 S.W.2d 479, 491 (Mo. banc 1997).

During its case-in-chief, the State presented testimony from Deputy Sheriff Michael Thorn ("Deputy Thorn") who had responded to the 9-1-1 call indicating that someone had been shot. During Deputy Thorn's testimony, the State moved to admit exhibit number 44, a photograph of Victim still lying on the bed at the crime scene. The State was enlarging the photo on the overhead projector for the jury to see when Victim's daughter lunged at defense counsel's table and cried, "[L]et me at him" or "I'm going to get him[.]" Immediately after that outburst, the following occurred:

[The State]: May we approach.

[The court]: Yes.

. . . .

[Defense counsel]: We might want to clear the jury.

4

| | |
|---|---|
| [The court]: | If you are asking that we excuse the jury, I will do so. |

. . . .

| | |
|---|---|
| [The court]: | The jury has been excused. For purposes of the record during the testimony of the last witness there was an outburst in the gallery by I believe the daughter of [Victim]. . . . |
| [Defense counsel]: | Your honor, I would move for a mistrial at this point. I think the outburst is problematic for the jury to witness. I am not sure any instruction would work at this point or that there is anything that the Court could do to really correct this. I'll stand on that, your Honor. |
| [The State]: | I think a limiting instruction can handle the outburst itself. I think it is what it is, they did see it; however, it was contained. But I think we can with other limitations on her victim's rights due to the fact to make sure it doesn't happen again. But a one-time outburst is not enough to warrant a mistrial at this point. |
| [The court]: | For further purposes of the record, the Court will recite its perception of the outburst and allow counsel the opportunity to address it if their perceptions were different.

It appeared as the photograph which was Exhibit #44 was being published on the overhead projector which was a photograph of [Victim]. The daughter in the gallery became emotional, stood and was attempting to move toward and lunging toward defense counsel table. She was seated on a bench on the opposite side of the courtroom. She was restrained by her – I believe the Court was advised by her husband. |
| [The State]: | That's correct. |
| [The court]: | Some in the courtroom believed they heard her to say – I am not speaking of jurors, said they believed her to say something along the lines of let me at him or I'm going to get him or something like that. Again, she was restrained by her companion. It did appear that the direction of her attempted movement was for counsel table, and then her companion escorted her out of the courtroom.
          Counsel, is that consistent with your perceptions? |

5

| [The State]: | I was actually looking at [Deputy] Thorn when I saw her he was already restraining her, but it did appear that she was coming and trying to get toward counsel table at the time. |
|---|---|
| [Defense counsel]: | Your honor, I informed you in chambers of a word I thought she used, and would be considered an explicative [sic]. I asked my assistant about that. She did not perceive that word so I think the Court has recited it actually. And I believe what [the State] observed it [sic] as well. |

The trial court denied Defendant's request for a mistrial. It then instructed the jury to disregard the outburst and any conduct or statements made by individuals behind the bar of the court. The trial court also excluded Victim's daughter from attending the remainder of the trial to prevent any further outbursts from her.

As our high court has noted, "[a] murder trial is inherently emotional." ***State v. Jensen***, 524 S.W.3d 33, 43 (Mo. banc 2017). "Although emotional outbursts are to be prevented insofar as possible, the trial court exercises broad discretion in determining the effect of such outbursts on the jury." ***Id.*** (quoting ***State v. Deck***, 994 S.W.2d 527, 539 (Mo. banc 1999)). In regard to prejudice, Defendant argues only that "the jury would have been understandably upset by the outburst[.]"

There is no claim that the prosecutor was responsible for the outburst. The trial court was in the best position to judge what, if any, impact the outburst had on the jury, ***State v. McDowell***, 832 S.W.2d 333, 334 (Mo. App. E.D. 1992), and Defendant has failed to demonstrate why denying a mistrial and giving the jury a limiting instruction was insufficient to cure any potential prejudice to Defendant that might have resulted from the outburst.[3]

---

[3] *See* ***Wilson***, 826 S.W.2d at 82 (mistrial request properly denied where spectator cried and yelled the victim's name for approximately 35 seconds; trial court properly admonished jury to disregard the comments); ***Brooks***, 960 S.W.2d at 489 (trial court properly overruled request for mistrial and instead

6

Point 1 is denied.

*Point 2 – Testimony of Previous Abuse*

In his second point, Defendant claims the trial court plainly erred in overruling his objections to questions asking Sister to testify about statements Victim had made to her about Defendant's previous abuse because the statements were hearsay and their admission violated his right to confront the witnesses against him.[4] We disagree.

> "The plain error rule should be used sparingly and [it] does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001) (quoting *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc 1990)). "Relief under the rule will only be granted if ... [Appellant] can show the action of the trial court was not only erroneous, but also the error so substantially impacted his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected." *State v. Kohser,* 46 S.W.3d 108, 111 (Mo.App.2001). "Plain errors are those which are evident, obvious, and clear." *Id.*

*State v. Lucio*, 247 S.W.3d 131, 134-35 (Mo. App. S.D. 2008).

Prior to trial, the State indicated its intent to introduce various out-of-court statements Victim had made to Sister about specific, previous acts of abuse that Defendant had committed against her. The State argued that the statements were admissible as non-hearsay statements revealing her state of mind, which is relevant in homicide cases where the defendant claims self-defense. Defendant argues that "the only possible relevance was the impermissible conclusion that the jury would draw – that if

---

controlled any possibility for further outbursts, where spectator screamed at defendant, "You are going to burn in hell"); *Martin*, 525 S.W.2d at 810-11 (trial court acted within its discretion in overruling request for mistrial after spectator had an outburst and defendant struck his attorney on the back of the head); *Jensen*, 524 S.W.3d at 43 (no abuse of discretion in denying mistrial where witness's outburst was spontaneous and isolated, and not intentionally invoked by the prosecutor); *McDowell*, 832 S.W.2d at 334 (no abuse of discretion to deny mistrial where spectator shouted, "I'm going to get you! I'm going to kill you, man!").

[4] Defendant rightly acknowledges that his point may only be reviewed for plain error under Rule 30.20 because the alleged error was not included in his motion for new trial. All rule references are to Missouri Court Rules (2018).

[Defendant] had previously abused [Victim], he must have intended to kill her." The trial court stated that it intended to allow Sister's testimony because the statements were "nontestimonial because [D]efendant has asserted self-defense the state of mind of the victim is relevant. The testimony is not barred by the hearsay exception."

"An allegedly wrongful admission of hearsay testimony does not constitute plain error if such testimony is merely cumulative to other evidence properly admitted." ***State v. Goodwin***, 43 S.W.3d 805, 818 (Mo. banc 2001). As earlier noted, Sister read aloud to the jury, without objection, a letter that Victim had written to Defendant. In that letter, Victim recounted how Defendant (just weeks prior to the date of the letter) had "terroriz[ed]" her, including threatening to shoot her twice, pointing a gun in her face and telling her he will blow her head off, and firing a gun into the air in her presence.[5] Despite all of this, Victim indicated in her letter a desire to reunite with Defendant. Victim wrote the letter less than one year before she was murdered, and it contained, among other things, the following:

> Just when I was feeling good about how you was responding accepting the fact that we needed time apart so we would find a solution to a problem, you had to blow it and start demanding me to come home making me feel guilty about staying at my sister's house. Then calling me a gutter slut and demanding me to run home before you file. This is actually what I want to get away from. I don't care if I have to start all over again, as long as I don't have to suffer all this terrorizing that's been happening. [Sister] says I look 10 years older this last past month. That's from all the terrorful living.
>
> Just in the past few weeks you have threatened to shoot me twice even giving the gun – firing the gun up into the air and then bringing it

---

[5] In his brief, Defendant does not argue that the contents of Victim's letters were inadmissible. Rather, he objects only to Sister's detailing Victim's *statements to her* regarding prior, specific acts of abuse committed against Victim by Defendant; specifically: (1) that Victim "tried to leave [Defendant] but he caught her and 'kicked her all the way back to the house'"; (2) that Defendant took gas out of her car every time she tried to leave; (3) that Defendant pulled Victim's arm out of the socket; and (4) that Defendant had twice pulled a gun on Victim.

back to a focus on my face telling me you will blow my head off. Then when I was trying to sleep you sat in the living room saying uh-oh, over and over again so you would keep waking me up because you wanted me to stay up with you. When that didn't work you ran in with a flash light shining it in my face for a few minutes terrorizing me. I got ready to put my pants on and you shoved the bed to the wall with me in between it.

> . . . .

I am not your property I am a person. You can't make it past one day without starting a fight. If you are that displeased with me, then why do you want to continue this?

> . . . .

We need to fix the problem or it is going to be the same hell I left. . . . Do you really want to continue in this endless destructive cycle?

Sister also testified that she personally witnessed Defendant point "a big-o-giant gun" in Victim's face. Because the testimony Defendant complains about was cumulative, its admission cannot rise to the level of plain error. *Id.*

Regarding Defendant's alternative claim that its admission violated the Confrontation Clause of the Sixth Amendment:

> The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington,* the Supreme Court of the United States held that the Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The testimonial nature of a statement is what makes the declarant a "witness" that the accused has the right to confront. *Id.* at 51, 124 S.Ct. 1354.

*State v. Kemp,* 212 S.W.3d 135, 147-48 (Mo. banc 2007).

"An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does

9

not." *Id.* at 150. "Statements that are not made to law enforcement personnel or governmental agents are not testimonial in nature, and Confrontation Clause protection does not extend to those situations[.]" *State v. Myers*, 248 S.W.3d 19, 24 (Mo. App. E.D. 2008). Because Victim's statements to Sister were not testimonial, the Confrontation Clause did not bar their admission. *Id.*

Point 2 is denied.

*Point 3 – Improper Rebuttal Argument*

Point 3 claims the trial court plainly erred in "failing to stop the prosecutor's closing argument because the argument was designed merely to inflame the passions and prejudices of the jury[.]" We disagree.[6]

"When reviewing closing argument for plain error, substantial latitude is allowed; even an improper argument does not justify relief unless Defendant has demonstrated the argument had a decisive effect on the jury." *State v. Beers*, 926 S.W.2d 215, 218 (Mo. App. E.D. 1996). "When argument is retaliatory, considerably more leeway is granted." *Id.*

In his closing argument, Defendant argued that the jury should not convict him due to various errors he claimed law enforcement officers committed in handling the investigation and evidence in the case. He asked the jury, "[w]ho is responsible to present this evidence to you?" Defendant suggested that no one wanted to take responsibility in the case, and the officers were passing the buck to one another. The

---

[6] Once again, counsel rightly concedes that this point may only be reviewed for plain error – this time because while the claim was included in Defendant's motion for new trial, no objection to the rebuttal argument was made at trial. As a result, the standard of plain-error review we noted in our analysis of Point 2 also applies to this point.

overarching message of Defendant's closing argument was that the jury should hold law enforcement responsible for their errors in the case by finding Defendant not guilty.

It was only after Defendant made this argument that the prosecutor, in rebuttal, told the jury that *he* was the one responsible for organizing and bringing the evidence against Defendant. While the prosecutor acknowledged that mistakes had been made in the investigation, which resulted in changes to certain law enforcement procedures, he argued that those mistakes were not a reason to find Defendant not-guilty of murdering his wife.

Defendant argues that this rebuttal argument improperly asked the jury to convict Defendant because the prosecutor had brought the charges, somehow implying that the prosecutor had a special knowledge of the witnesses and their credibility. We do not read the argument as making any such claim. The trial court did not err, plainly or otherwise, in failing to *sua sponte* intervene in the State's rebuttal argument.

Point 3 is also denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. – CONCURS

11