

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111041 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court of |
| vs. | ) | Jefferson County |
| | ) | 18JE-CR03039-01 |
| | ) | |
| DEWEY AUSTIN BARNETT, | ) | Honorable Brenda Stacey |
| | ) | |
| Appellant. | ) | Filed: May 21, 2024 |

Before John P. Torbitzky, P.J., James M. Dowd, J., and Michael S. Wright, J.

## OPINION

Appellant Dewey Barnett appeals his convictions of first-degree assault in violation of section 565.050[1] and armed criminal action in violation of section 571.015 (RSMo Supp. 2018) for stabbing Victim M.W. with a knife several times in her home on October 29, 2018, in Jefferson County, Missouri.  The jury found him guilty following a trial in which Barnett represented himself after having waived his right to appointed counsel.  The trial court sentenced him to consecutive terms of twenty-two years for the assault and five years for the armed criminal action, resulting in twenty-seven years in prison.

Barnett asserts several errors on appeal.  First, Barnett claims that the trial court erred in accepting his waiver of counsel and allowing him to proceed pro se because his waiver was

---

[1] All statutory references are to Revised Statutes of Missouri (2016) unless otherwise stated.

equivocal in that he repeatedly requested standby counsel. Next, Barnett claims that his right to counsel was violated because the trial court's *Faretta* hearing was insufficient to establish that his waiver of counsel was knowing and voluntary. In his third point, he asserts that the trial court erred in failing to include the sudden passion language in the verdict director because he adduced evidence at trial that the assault on Victim resulted from "sudden passion arising out of adequate cause" and the failure to include the language misled the jury and deprived him of a fair trial. In his fourth point, Barnett asserts that the trial court erred at the sentencing hearing by failing to conduct a second *Faretta* hearing and to obtain another written waiver of counsel. Next, Barnett claims that the trial court erred in sentencing him to *consecutive* prison terms because the version of the applicable armed criminal action statute at the time of the crime did not mandate consecutive sentences though the trial court erroneously believed that it did. Lastly, Barnett claims the trial court erred because it mistakenly believed that it could not under Missouri law appoint standby counsel.

While we reject Points I, II, III, IV, and VI, we agree with Point V that the trial court erred in sentencing Barnett to consecutive terms because it did so under its erroneous belief that it was required to do so. Therefore, for the limited purpose of resentencing, we reverse and remand to allow the trial court to exercise its discretion *only* on the issue of whether to run Barnett's sentences consecutively or concurrently.

## Background

On October 29, 2018, Barnett stabbed Victim with a knife several times after entering her home in Jefferson County, Missouri, with her consent because she considered him to be a friend. Victim called 911 and as police arrived at the scene, they found Barnett near Victim's home. Barnett admitted to police that he stabbed Victim, then he fled. Police arrested him after a brief foot pursuit. During the pursuit, Barnett dropped a knife with blood on it. He had blood on his

2

clothes and on his hand. The court appointed Barnett an attorney from the public defender's office after the State charged him with first-degree assault and armed criminal action. After that attorney pursued employment elsewhere, the court appointed a second attorney from the public defender's office in early February 2020 and Barnett became dissatisfied with her in September 2020. When she retired, the court appointed another attorney and Barnett soon soured on him as well.

On December 13, 2021, Barnett filed a written request that the court remove his public defender and allow him to proceed pro se. On January 28, 2022, during a hearing regarding his bond, Barnett again asked the court to discharge his appointed counsel so that he could represent himself. The court told him that it would consider this request at a later date. On March 28, 2022, during a pre-trial conference, Barnett cited *Faretta v. California*, 422 U.S. 806 (1975) and again invoked his constitutional right to represent himself. During this exchange, the court asked Barnett, "So my understanding is that you want to proceed pro se without a lawyer?" Barnett confirmed the court's understanding. Later during that appearance, Barnett again told the court that he wanted his public defender off the case and reminded the court that he had invoked his constitutional right to represent himself four months prior.

The court then proceeded to a *Faretta* hearing during which the court described the nature of the charges and the rights Barnett sought to waive in order to ensure the waiver was knowing and voluntary. During the hearing, Barnett asked, "I have a right to hybrid counsel; correct?" The court incorrectly told Barnett that Missouri did not allow hybrid, or standby, counsel. Barnett's counsel, who still represented him at the time, explained to the court that although standby counsel is disfavored, he was not aware of any black and white rules regarding the issue. The court again asked Barnett, "You do not want a lawyer? Is that right, Mr. Barnett?" He replied, "Not from Hillsboro Public Defender's Office I don't, no." After asking a few more

3

questions, the court found that Barnett knowingly, voluntarily, and intelligently waived his right to counsel and granted his public defender leave to withdraw. Barnett also signed a waiver-of-counsel form drafted pursuant to section 600.051.

On May 4, 2022, during another pre-trial conference, the court again asked Barnett if he was certain that he wanted to proceed without a lawyer. Barnett referenced his previous request for standby counsel which the court again rejected based on its belief that Missouri did not allow standby counsel for pro se defendants. Barnett reiterated his unwillingness to be represented by the public defender's office, claiming "I feel that to even have a fair chance I'd have to represent myself." The court warned Barnett that waiving his right to counsel was to "knowingly proceed in ignorance into the labyrinth of the law without the assistance of a trained guide" and gave him examples of why proceeding without a lawyer was a bad idea. Barnett told the court that he understood. The court then explained the range of punishment for the crimes. Barnett then signed a second waiver of counsel which included the potential range of punishment.

On June 8, 2022, trial began. Victim, several police officers, and a criminalist from the Missouri highway patrol all testified for the State. At various points during trial and outside the presence of the jury, Barnett expressed frustration with the court because he was having difficulty cross-examining witnesses and introducing evidence. He again invoked the notion of standby counsel because he did not know what he was doing.

Barnett did not call any witnesses and he moved for judgment of acquittal at the close of the State's case and at the close of all evidence based on his claims that (1) the State failed to prove that the knife police found at the scene was the knife used to stab Victim, (2) there was unknown DNA on the knife, and (3) not all the blood found at the crime scene was tested so as to exclude other culprits. The court denied both motions, but told Barnett that he could present all of those points during closing argument. The next day, the court held the instruction conference

4

before submitting the case to the jury. Barnett did not make any objections during the instruction conference. The jury found Barnett guilty on both counts and on August 8, 2022, the court sentenced Barnett to consecutive terms of twenty-two years for the first-degree assault conviction and five years for the armed criminal action.

This appeal follows.

## Standard of Review

To preserve a constitutional claim of error, the claim must be raised at the earliest opportunity possible. *State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023) (internal quotations omitted). In order to preserve other claims of error for appellate review, the errors must be raised in post-trial motions. *Id.* In general, unpreserved claims may only be reviewed for plain error. *Id.*

"The threshold issue in plain error review is whether the circuit court's error was facially evident, obvious, and clear. If the appellant establishes a facially evident, obvious, and clear error, then this Court will consider whether the error resulted in a manifest injustice or miscarriage of justice. To obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (internal quotations omitted). In other words, "[t]o hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *State v. Roper,* 136 S.W.3d 891, 903 (Mo. App. W.D. 2004). Plain error review, however, is discretionary and "this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *State v. Brandolese*, 601 S.W.3d 519, 531 (Mo. banc 2020).

5

Furthermore, "[a] defendant who proceeds pro se is bound by the same rules as a party represented by counsel." *Id.* (quoting *Franklin v. State*, 24 S.W.3d 686, 692 (Mo. banc 2000)). We cannot hold pro se defendants to a different standard than those represented by counsel. *Id.*

**Discussion**

I.

In his first point, Barnett asserts that the trial court erred in accepting his waiver of counsel and allowing him to proceed pro se because he requested standby counsel and therefore his waiver was not unequivocal. We disagree because Barnett repeatedly and unequivocally waived his right to counsel in order to represent himself and his request for standby counsel to assist him did not render his waiver unequivocal. Barnett did not preserve this claim because he raised it for the first time in this Court. Thus, we review for plain error only. *State v. Alexander*, 505 S.W.3d 384, 396 (Mo. App. E.D. 2016).

A waiver of a defendant's right to counsel must be timely, unequivocal, knowing, and intelligent. *State v. Grant*, 537 S.W.3d 426, 428 (Mo. App. S.D. 2018). Ambiguous requests for waiver of counsel are not sufficient to assert the right. *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007). "The probability that a defendant will appeal either decision of the trial judge underscores the importance of requiring a defendant who wishes to waive his right to counsel to do so explicitly and unequivocally." *Id.* (quoting *State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997). "A criminal defendant has a constitutional right under the Sixth and Fourth Amendments to represent himself and waive counsel, or to have counsel of his choice to represent him; but he has no right to hybrid representation – a combination of self-representation and assistance of counsel." *State v. M.L.S.*, 275 S.W.3d 293, 300 (Mo. App. W.D. 2008). Moreover, while a criminal defendant has a constitutional right to legal counsel, he does not have

6

an absolute right to be represented by counsel of his choosing. *State v. Briggs*, 318 S.W.3d 203, 206 (Mo. App. W.D. 2010).

The record here demonstrates that Barnett repeatedly and unequivocally invoked his constitutional right to represent himself. In December 2021, Barnett invoked in writing his constitutional right to proceed pro se and asked the court to discharge his appointed counsel. Then, at a preliminary hearing on January 28, 2022, Barnett again invoked his right to proceed pro se. He claimed that he knew firing his attorney was "not intelligent" but complained that "nothing had been done" for nearly three years. He further stated, "I've been trying to remove [attorney] off of my case for a year and a half … and I've been forced by the courts to have her represent me." The court did not take up this issue that day.

At a hearing on March 28, 2022, Barnett again unequivocally invoked his constitutional right to proceed as a pro se litigant. At this point, his prior appointed attorney had retired and a new one had been appointed to him but Barnett was still unhappy because his new attorney was allegedly not doing the things that Barnett asked him to do. During this March 28 exchange with the court, Barnett confirmed to the court that he "want[ed] to proceed pro se without a lawyer." Barnett told the court that he had had three public defenders and none of them "respected" his defense. Later during the hearing, he again stated that he wanted his public defender off the case, again invoked his constitutional right to represent himself, and again refused to proceed with appointed counsel representing him. Finally, the court again asked, "And so you do not want a lawyer? Is that right, Mr. Barnett?" He responded, "Not from Hillsboro Public Defender's office I don't, no." Then, the court asked if Barnett understood that by signing the waiver of counsel, he would not have a lawyer represent him at trial. Barnett told the court that he understood and then signed the waiver of counsel.

7

A month or so later, at a hearing on May 4, 2022, the court once again asked Barnett if he was sure about his decision to proceed without a lawyer. He responded, "On March 28th, I requested hybrid counsel, standby counsel, and I was told that you guys didn't do that in Missouri." The court responded, "Right. Missouri doesn't have hybrid counsel. So you can get a lawyer appointed for you." Barnett responded, "Well, here's the problem, your Honor. I'm having a major conflict of interest with the Public Defender's Office … I feel that to even have a fair chance I'd have to represent myself." He later stated that if the public defenders were not willing to do the things that he asked them to do in his defense, he did not need them. He signed another waiver.[2]

For his part, Barnett now claims that his requests were equivocal since he also requested standby counsel. He relies on *Hampton*, 959 S.W.2d 444. In *Hampton*, "[defendant] never suggested that by asking to act as his own lawyer, he intended to waive his right to be represented by counsel." *Id.* at 448. Instead, the defendant wanted to control the decisions of his attorneys while still having his attorneys conduct voir dire, cross-examine witnesses, etc. *Id.* In contrast, here, Barnett expressed multiple times his desire to completely forego counsel. Furthermore, despite the court's denial of standby counsel, Barnett was adamant in his desire and intention to proceed pro se and he signed a waiver knowing that he would not have *any* assistance from counsel at trial. Therefore, Barnett's waiver was unequivocal because even after the court denied standby counsel, albeit mistakenly, Barnett still wanted to represent himself.

---

[2] This waiver of counsel form included all the language and admonitions required by section 600.051, including the correct range of punishment for both counts, but it incorrectly stated that the armed criminal action sentence had to run consecutively to the assault sentence. The purpose of including the minimum and maximum sentences in the waiver is to ensure that the defendant understands the potential sentences he faces and gravity of his predicament. Here, since the waiver warned of an even greater maximum sentence than what he actually faced, no harm resulted.

We are also unpersuaded by *State v. Hamilton*, 791 S.W.2d 789, 796 (Mo. App. E.D. 1990), where this Court found defendant's waiver of counsel was not unequivocal because the record showed that defendant "did not really wish to proceed pro se; he merely did not wish to proceed with his particular appointed counsel" and therefore the trial court did not err in denying the defendant's request to represent himself. Here, Barnett stated on *at least* four occasions that he did not want an attorney *at all* and wanted to represent himself. In the May 4 hearing, the court actually told Barnett that while he could not have hybrid counsel, he could still have a lawyer appointed to him, which Barnett rejected. Later during this hearing, after Barnett showed confusion about a statute, the court explained to Barnett that such moments demonstrate why appointed counsel would be beneficial and again ensured that Barnett understood the rights he waived.[3] The record demonstrates that Barnett only wanted to be represented by appointed counsel if counsel did exactly what he wanted. After discovering that appointed counsel would not blindly follow his orders, Barnett sought to represent himself and these instances show that Barnett wished to proceed pro se unequivocally.

Moreover, we are guided by *Rollins v. State*, 454 S.W.3d 380, 384 (Mo. App. W.D. 2015), in which Rollins argued that his appellate counsel was ineffective for failing to argue in his direct appeal that he did not knowingly and voluntarily waive his right to counsel because his waiver was not unequivocal. The court found that, despite defendant's repeated requests for

---

[3] In Hamilton's habeas corpus case, the Eighth Circuit affirmed the district court's denial of habeas corpus and further determined that this Court's holding in *State v. Hamilton*, 791 S.W.2d at 796, that defendant's request was not unequivocal was correct because the defendant told the court that he was not serious about representing himself and he was not asking to completely proceed pro se – instead, he wanted a different public defender. *Hamilton v. Groose*, 28 F.3d 859, 862 (8th Cir. 1994). Moreover, the trial court denied the defendant's request because it was concerned due to his lack of education and familiarity with the law. *Id.* at n.3. Here, Barnett's statements and conduct throughout the proceeding shows that he did not want appointed counsel at all – although he claimed he was "forced" and "had no other choice" but to represent himself, the record shows that he did in fact have a choice, on several occasions, and he chose the wrong path and now understandably regrets it.

standby counsel, his waiver of counsel was still unequivocal, in part because "his desire for assistance after a valid waiver of counsel does not later render that waiver invalid." *Id.* at 386 (citing *State v. Garth*, 352 S.W.3d 644, 651 (Mo. App. E.D. 2011)).  Similarly, here, Barnett remained steadfast in his decision to represent himself until nearly halfway through trial when he appeared to realize he was in over his head.  Although we sympathize with the struggles Barnett faced throughout the trial, this record shows that the court appropriately warned him that "the right to waive counsel is the right to knowingly proceed in ignorance … into the labyrinth of the law without the assistance of a trained guide" and that his waiver of counsel was unequivocal. *State v. Shafer*, 969 S.W.2d 719, 728-29 (Mo. banc 1998).  Thus, the trial court did not commit any error here much less "evident, obvious, and clear error" necessary for us to review for plain error.  Point I is denied.

## II.

Barnett claims in this point that the trial court's *Faretta* hearing was insufficient and therefore that his waiver was not knowing and voluntary.  Granted, during the *Faretta* hearing the court could have been even more emphatic in warning Barnett that proceeding unrepresented was asinine, the record nevertheless demonstrates that the court discussed with Barnett most of the topics Missouri law requires, such as the nature of the charges, potential sentences if convicted, and the danger in proceeding pro se. *State v. Black*, 223 S.W.3d at 154.  Moreover, Barnett demonstrated his familiarity with the nature of trial proceedings by actively participating in voir dire, preparing a subpoena, giving an opening statement, cross-examining witnesses, arguing motions, and giving a closing argument. *State v. Teter*, 665 S.W.3d 306, 316 (Mo. banc 2023).  Based on our review of Missouri case law, therefore, the court's inquiry was sufficient

and we decline to review this unpreserved point for plain error because there was no evident, obvious, and clear error.[4]

## III.

Barnett asserts in his third point that the trial court should have included the sudden passion language in the verdict director for the assault charge because the evidence supported that he acted under the influence of sudden passion arising out of adequate cause when he stabbed Victim and the court's failure to do so misled the jury and deprived him of a fair trial. MAI-CR 4th 419.02. The dubious evidentiary support to which Barnett points involved Victim's text messages with Barnett's girlfriend which upon review lack any inflammatory language that could support the submission of an assault second (sudden passion) verdict director. We apply our plain error standard because Barnett failed to preserve this argument in that during the instruction conference he failed to offer an instruction with that language and failed to object to the verdict director given by the court which lacked that language. And after reviewing this record, we find no evident, obvious, and clear error and therefore we decline to review this unpreserved point for plain error.

## IV.

In his fourth point, Barnett claims that at his sentencing the trial court should have conducted a second *Faretta* hearing and should have had Barnett sign a second waiver of counsel. This argument is also not preserved as it was raised for the first time here.

---

[4] Barnett contends that although this claim was not preserved, he is entitled to *de novo* review because he was acting pro se. In *Teter*, 665 S.W.3d at 312, Teter argued that the *de novo* standard applied to the Court's review of his claim that the trial court's *Faretta* hearing was insufficient, but the Supreme Court exercised plain error review because the defendant was still represented by counsel during the *Faretta* hearing. Similarly, here, Barnett's counsel still represented him during his hearing and had the responsibility to object on Barnett's behalf. Thus, we apply the plain error standard of review.

Barnett does not cite to any authority that the court must conduct a second *Faretta* hearing at *sentencing* after the defendant has already represented himself at trial following an initial *Faretta* hearing. We are unaware of any authority that supports this assertion. Thus, again, we find no evident, obvious, and clear error, and decline to review this unpreserved point for plain error.

V.

In his fifth point, Barnett asserts that the trial court erred in sentencing him to consecutive prison terms based on its erroneous belief that it was required by law to do so inasmuch as the version of section 571.015 (RSMo Supp. 2018) in effect at the time of the offense did *not* require the sentence for armed criminal action to run consecutive to the sentence on the assault conviction. We agree.

"A defendant must be tried for the offense as defined by the law that existed at the time of the offense." *State v. Pliemling*, 645 S.W.3d 86, 91 (Mo. App. S.D. 2022) (internal quotation marks omitted). "When the record demonstrates that the trial court imposed consecutive sentences instead of concurrent sentences based on a misunderstanding of the law, such conduct is plain error and the defendant is entitled to resentencing." *State v. Elam*, 493 S.W.3d 38, 43 (Mo. App. S.D. 2016); *see also State v. Freeman*, 212 S.W.3d 173, 177 (Mo. App. S.D. 2007). It is not enough, however, that the trial court *held* the mistaken belief, the court must have *based* its sentencing decision on that erroneous belief. *State v. Pierce*, 548 S.W.3d 900, 905 (Mo. banc 2018). And when the record demonstrates that the trial court's sentence was due to its own valid considerations, even though the court also mistakenly believed the law required consecutive sentences, appellate courts have refused to reverse and remand for resentencing. *Elam*, 493 S.W.3d at 43.

These crimes occurred in October 2018 and at that time, section 571.015 (RSMo Supp. 2018) allowed the trial court to use its discretion in ordering armed criminal action sentences to run concurrently or consecutively to the related crime's sentence. *State v. Halbrook*, 666 S.W.3d 197, 198 n.1 (Mo. App. S.D. 2023). The current version of section 571.015, which is not applicable here, however, mandates consecutive sentences in this context.

This record demonstrates that the court's misapprehension on this issue drove its sentencing decision. While discussing with Barnett his possible sentences, the court stated on the record no fewer than three times that it was required by law to run the sentences consecutively. Unlike in *Pierce* and *Elam*, where the records showed that those trial courts relied on the severity and disturbing nature of the crimes to determine the sentences (possession of child pornography in *Pierce* and statutory rape and statutory sodomy in *Elam*), there is no indication here that the court relied on its own valid considerations in running Barnett's sentences consecutively.

We note that the Court in *Pierce* abrogated several cases in which the court of appeals had found plain error from the trial court's mistaken belief that a statute required consecutive sentences even though the sentences were not based on that mistaken belief. 548 S.W.3d at 905-06. The circumstances here are readily distinguishable from those cases abrogated by *Pierce* because here it is manifest that the court not only held the mistaken belief, but also sentenced Barnett accordingly and made no mention on the record that it was for any other reason.

Based on the foregoing, the trial court plainly erred in sentencing Barnett to consecutive sentences and thus we remand for re-sentencing so that the trial court may apply the version of section 571.015 that was in effect in 2018 for the limited purpose of deciding whether Barnett's sentences should run concurrently or consecutively.

Lastly, Barnett claims that the trial court erred in denying him standby counsel because the court mistakenly believed it had no authority to appoint standby counsel. We agree it was error but since this claim was not preserved, we review for plain error only.[5]

First, we find that Barnett has established that the court's mistake was obvious, evident, and clear – Missouri has routinely approved the appointment of standby counsel for defendants representing themselves. *See generally State v. Lavender*, 680 S.W.3d 119 (Mo. App. S.D. 2023); *State v. McMillon*, 436 S.W.3d 663 (Mo. App. E.D. 2014); *State v. Fritz*, 480 S.W.3d 316 (Mo. App. S.D. 2016); *State v. Davis*, 507 S.W.3d 41 (Mo. App. E.D. 2016). Here, the court addressed the issue on multiple occasions over several months' time. The court expressed its belief that standby counsel was not permitted in Missouri and ultimately denied Barnett standby counsel based on that erroneous belief all the while acknowledging its ignorance of the actual answer to the issue. We encourage trial courts to get answers to such important questions before shooting from the hip.

Yet, despite the court's obvious, evident, and clear error, Barnett has failed to show, as he is required to do under our plain error standard of review, that manifest injustice occurred by showing that the error was outcome determinative. *Wood*, 580 S.W.3d at 579.

---

[5] Barnett claims that we should review this point under an abuse of discretion standard. We disagree because at the time the trial court first misstated the law, Barnett was still represented by counsel and counsel did not object. Therefore, we review this point under our plain error standard of review. *Teter*, 665 S.W.3d at 312. Moreover, while wrongly denying a defendant's Sixth Amendment right to counsel or wrongly denying a defendant the right to represent himself are structural errors that warrant reversal, we find that no structural error occurred because the trial court correctly accepted Barnett's unequivocal waiver of counsel in order to exercise his constitutional right to represent himself and the court merely denied Barnett hybrid or standby counsel for which there is no constitutional right and therefore structural error is not implicated. *M.L.S.*, 275 S.W.3d at 300.

No Missouri case has addressed this exact question, but other jurisdictions have. In *People v. Bigelow*, 691 P.2d 994, 1000 (Cal. 1984), a capital case, the Supreme Court of California found that the trial court erred in denying advisory counsel based on its mistaken belief that California did not allow it. The Supreme Court of California examined the trial court's decision within the context of that capital case and held that "[m]istakenly believing it had no authority to appoint advisory counsel, the trial court failed to exercise its discretion. That failure … gains in significance because on the record in this case it would have been an abuse of discretion to deny the request for advisory counsel." *Id.* at 1001. Thus, the court reversed the trial court.

In *State v. Clark*, 722 N.W.2d 460, 467 (Minn. 2006), the Supreme Court of Minnesota distinguished *Bigelow* because *Bigelow* was a capital case and the case before it was not, and unlike *Bigelow*, the court could not say with certainty that the failure to appoint standby counsel was an abuse of discretion. Thus, any error in failing to exercise its discretion in appointing standby counsel was not reversible error. *Id.* at 469.

Furthermore, the defendant in *Clark* claimed that he was prejudiced by the denial of standby counsel because "there were numerous instances where he could have benefited from counsel's presence." *Id.* at 468. The court held, however, that the defendant did not show prejudice because the only serious issues in dispute were whether he possessed the firearm admitted into evidence and whether he either stole a car or had knowledge of the crime and his testimony during trial contradicted the testimony which he sought to present and that testimony did not affect the issues in dispute. *Id.* In other words, he failed to show what difference standby counsel would have made.

We find that the situation here more closely resembles the facts in *Clark* than those in *Bigelow* because we do not know whether the trial court would have appointed standby counsel

if it had known that it could and Barnett has failed to demonstrate what difference standby counsel would have made given the overwhelming evidence of his guilt. *State v. Walter*, 479 S.W.3d 118, 126 (Mo. banc 2016).

While Barnett contended at trial that there was scant evidence that he committed the crime and that he was merely at the wrong place at the wrong time, the record reflects the opposite. First, Victim testified that Barnett stabbed her. Second, the first police officer to arrive on scene testified that Barnett told him that he stabbed her. Several police officers testified that Barnett ran away with a bloody knife that he dropped after tripping over a curb. Furthermore, a criminalist testified that the blood from Barnett's jeans and shirt matched the Victim's DNA. The knife also contained two sources of DNA, one being consistent with Victim's.

Thus, we find that no manifest justice occurred. While Barnett realized about mid-trial that his decision to represent himself was foolish, that ship had sailed because he had already waived counsel. Moreover, Barnett has failed to demonstrate with any degree of specificity what if anything standby counsel would have done or would have advised Barnett to do that would have been outcome determinative particularly given Barnett's stubborn insistence on representing himself and stubborn reluctance to listen to his prior counsel and the court.

### Conclusion

For the reasons set forth above, we affirm we affirm Barnett's convictions and sentences and remand only for the trial court to decide whether his sentences should run concurrently or consecutively pursuant to section 571.015 (RSMo Supp. 2018).

_____
James M. Dowd, Judge

Michael S. Wright, J. concurs
John P. Torbitzky, P.J., dissents in a separate opinion.

16



# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111041 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| v. | ) | 18JE-CR-03039-01 |
| | ) | |
| DEWEY AUSTIN BARNETT, | ) | Honorable Brenda Stacey |
| | ) | |
| Appellant. | ) | Filed: May 21, 2024 |

### DISSENTING OPINION

I respectfully dissent from the principal opinion. I disagree with the principal opinion's conclusion that Barnett unequivocally waived his Sixth Amendment right to assistance of counsel. On several occasions Barnett requested that the court appoint him new counsel. When told that was not an option, Barnett requested standby counsel. When the circuit court erroneously informed him that was not an option, Barnett requested to represent himself. In this situation, this Court has long held that the request for self-representation is equivocal and should be denied.

The principal opinion also holds that the circuit court committed evident, obvious, and clear error when it denied Barnett standby counsel on the erroneous belief that standby counsel is not permitted in Missouri. I agree that this error was evident, obvious, and clear. Unlike the principal opinion, however, I would hold that this error constituted manifest injustice. The circuit

court's error violated Barnett's Sixth Amendment right to counsel, resulting in a structural error that undermines confidence in the entire proceeding and necessarily amounts to manifest injustice.

First, I disagree with the principal opinion's determination that Barnett unequivocally waived his right to counsel. The principal opinion's holding that Barnett repeatedly and unequivocally waived his right to counsel is not supported by the factual record or legal authority.

To ensure a defendant properly waives the right to counsel, the circuit court must comply with two requirements. *State v. Cox*, 659 S.W.3d 651, 654 (Mo. App. 2023). First, a "thorough evidentiary hearing must support the [circuit] court's ruling upon a defendant's timely and unequivocal request to proceed *pro se.*" *State v. Teter*, 665 S.W.3d 306, 313 (Mo. banc 2023) (quoting *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007)). Second, the defendant must sign a waiver of the right to assistance of counsel. Section 600.051, RSMo 2016.[1] When "the defendant unequivocally invokes the right to self-representation, does so in a timely manner, and the corresponding waiver of counsel is knowing and intelligent, a [circuit] court may not force an attorney on a competent defendant." *State v. Davis*, 318 S.W.3d 618, 630 (Mo. banc 2010).

The determination as to whether the defendant made a timely, unequivocal, knowing and intelligent waiver must be made on the record. *State v. Grant*, 537 S.W.3d 426, 428 (Mo. App. 2018). "To ensure a knowing and intelligent waiver of counsel, this Court has stated that trial courts must engage in a colloquy with the defendant to make certain the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights." *Davis*, 318 S.W.3d at 630-31 (internal quotation omitted).

---

[1] All statutory references are to RSMo 2016.

A request for self-representation is equivocal when the defendant states he or she would prefer different counsel, but will proceed *pro se* if another attorney is not provided. *State v. Hamilton*, 791 S.W.2d 789, 796 (Mo. App. 1990). In *Hamilton*, the defendant complained that his counsel refused to conduct his defense in the manner of his choosing leading the defendant to request to proceed *pro se*. *Id.* The circuit court denied the request, and this Court affirmed. *Id.* In so holding, the Court stated, "[A] request is not considered unequivocal where the defendant merely states that he would prefer to represent himself rather than accept the aid of his appointed attorney, but would like another attorney appointed who meets his standards." *Id.* That was precisely the case in *Hamilton*, where the record showed "that appellant did not really wish to proceed *pro se*; he merely did not wish to proceed with his particular appointed counsel. This is not an unequivocal request for representation." *Id.*[2] *See also State v. Hampton*, 661 S.W.3d 409, 416 (Mo. App. 2023) (noting that requests for "appointment of new counsel, 'an exchange of attorney,' 'fair legal representation,' and 'the right to proper legal counsel'" made before a request for self-representation render the request equivocal.).

Barnett's request fits this bill. Starting in September 2020, Barnett began to request a different public defender. On September 18, Barnett filed a motion with the circuit court requesting that the circuit court appoint him a new attorney. The circuit court denied that request. In November 2020, Barnett again requested that the circuit court appoint him a different lawyer, stating, "I want new counsel. I need a lawyer [who] believes in the presumption of innocence[.]"

---

[2] Hamilton eventually sought habeas corpus relief in the federal courts. In its opinion affirming the denial of habeas corpus the Eighth Circuit stated, "The probability that a defendant will appeal either decision of the trial judge underscores the importance of requiring a defendant who wishes to waive his right to counsel to do so explicitly and unequivocally" and reiterated the U.S. Supreme Court's instruction that "[a] court must 'indulge in every reasonable presumption against [a defendant's] waiver' of his right to counsel[.]" *Hamilton v. Groose*, 28 F.3d 859, 862, 863 (8th Cir. 1994).

3

In March 2021, Barnett filed a document requesting that his attorney withdraw from the case so that another attorney could be appointed. Finally, in December 2021, after having been denied new counsel, Barnett filed a motion seeking to proceed *pro se*. At a hearing in January 2022, Barnett brought up his motion and stated "[T]his is not a smart thing on my part to do at this point at this stage in my case, but, your Honor, I am forced. I have no other choice." When asked if he would try to hire a lawyer if his public defender were removed, he stated, "At this point I'm going to have to represent myself." The circuit court eventually deferred the hearing of that motion.

At the pre-trial hearing on March 28, 2022, the circuit court heard from Barnett. Barnett complained of his counsel's diligence and honesty and then stated that he wished to proceed *pro se*. Barnett explained he believed his appointed counsel was prejudiced against his defense because "things I've asked [Counsel] to do, things to prepare for this pretrial, that are not done. How do I combat evidence if I can't get the things that need to be done?"

Barnett acknowledged he did not have the right to choose his public defender, but stated that "the Sixth Amendment says I have the right to assistance of counsel, and if they're ineffective then I'm not getting a fair trial." The circuit court then questioned Barnett regarding his understanding of the charges against him, his right to an appointed counsel, the right to a jury trial, the right to remain silent, his understanding that the State's recommendation is not binding on the court, a conviction would result in a prison term, and the right to appeal a guilty verdict.

Finally, the circuit court asked, "Do you understand these rights and you want me to accept your waiver of an attorney?" Barnett responded, "I have a right to hybrid counsel; correct?" The circuit court responded, "Not in Missouri I don't believe, unless there's new case law that I'm unaware of." Barnett continued to explain to the circuit court that he wanted counsel

4

who would "do the things that need to be done." The circuit court expressed its lack of understanding with Barnett's position and asked if he wanted an attorney. Barnett responded by saying "Not from Hillsboro Public Defender's Office I don't, no." Barnett was then provided with a written waiver of counsel form to sign. The punishment range stated on the form was incorrect.

At another pre-trial hearing on May 4, 2022, the circuit court again informed Barnett he had the right to counsel. The circuit court asked whether Barnett wanted representation. Barnett reiterated that he had requested hybrid or standby counsel, but was told that was not available to him. Because he was not allowed hybrid or standby counsel, Barnett believed that he would have to represent himself. The prosecutor prepared another waiver of counsel form with a different range of punishment for Barnett to sign. This range of punishment was also inaccurate.

This record shows exactly the type of equivocal request at issue in *Hamilton*. Barnett expressed that he wanted the assistance of counsel who would be able to help him with his defense but not one who was ineffective. Barnett timely raised the issue of having hybrid or standby counsel multiple times, and the circuit court repeatedly and erroneously stated that standby counsel was not available under Missouri law. As a result, Barnett believed he "had" to represent himself. Under these circumstances, Barnett's repeated insistence on having standby counsel to assist in his defense is not an unequivocal waiver of his right to counsel. *Hamilton*, 791 S.W.2d at 796. Because Barnett never sought to relinquish the assistance of counsel, but merely was seeking effective representation, he did not unequivocally waive this right. *State v. Hampton*, 661 S.W.3d at 416.

Additionally, Barnett was never provided with an accurate § 600.051 waiver of counsel to sign. "A violation of [s]ection 600.051 constitutes a manifest injustice or miscarriage of

5

justice." *Cox*, 659 S.W.3d at 655. Section 600.005.1(3) states the waiver must provide at least the maximum and minimum possible sentence that could be imposed. The first waiver of counsel form Barnett signed in March 2022, did not accurately reflect the range of punishment. Accordingly, the State presented Barnett another waiver of counsel form in May 2022. However, that form also did not accurately reflect the range of punishment. The second waiver stated that any sentence imposed on the armed criminal action charge would run consecutively to the sentence imposed for assault. As the principal opinion notes, the circuit court was incorrect in believing the sentences must run consecutively. For this reason, the sentencing range stated in the second waiver form was incorrect. By failing to insure either of Barnett's waiver of counsel forms were accurate, Barnett's waiver of counsel was not knowing and intelligent. *Cox*, 659 S.W.3d at 655. The circuit court plainly erred in providing an inaccurate waiver of counsel form.

Second, while I agree the circuit court committed an evident, obvious, and clear error by denying Barnett standby counsel[3] on its erroneous belief standby counsel is not permitted, I disagree with the principal opinion's application of plain error review. Plain error review is a two-step process:

> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

---

[3] The appointment of standby counsel is at the discretion of the circuit court. We review discretionary actions of the circuit court for an abuse of discretion. *See Teter*, 665 S.W.3d at 318 (explaining abuse of discretion standard). If the circuit court abuses its discretion in its decision regarding standby counsel, the circuit court violates a defendant's right to counsel. Here, the circuit court's failure to exercise its discretion amounts to an abuse of discretion and a violation of Barnett's right to counsel. Had the circuit court offered to appoint a public defender as standby counsel, either: (1) Barnett would have refused and unequivocally waived his right to counsel, or (2) he would have had the assistance he was requesting and counsel could have assisted him with deposition and admitting evidence in his defense.

*State v. Hilbert*, 663 S.W.3d 462, 465 (Mo. banc 2023) (quoting *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022)).

In most cases, when engaging in the second step of the analysis, this Court looks to the test outlined by the principal opinion. That is, the Court asks the question of whether the error was "outcome determinative." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019). For instance, the *Wood* case, cited by the principal opinion for this proposition, involved statements made by the State in closing argument. *Id.* This is considered a trial error, and as such, this Court can evaluate any effect the error had on the outcome of the trial. Most errors are trial errors "because the errors occurred during the presentation of the case to the jury and their effect may be quantitatively assessed in the context of other evidence presented in order to determine whether they were harmless beyond a reasonable doubt." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148, 126 S. Ct. 2557, 2563–64, 165 L. Ed. 2d 409 (2006) (internal quotations omitted).

The violation of a Sixth Amendment right, however, is treated differently. "The denial of a defendant's Sixth Amendment right to counsel is structural error." *State v. Kunonga*, 490 S.W.3d 746, 766 (Mo. App. 2016); *see also Teter*, 665 S.W.3d at 321-22 (Breckenridge, J., concurring). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver v. Massachusetts*, 582 U.S. 286, 294-95, 137 S. Ct. 1899, 1907, 198 L. Ed. 2d 420 (2017). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 3106, 92 L. Ed. 2d 460 (1986)). "A demonstrated violation of a defendant's right to counsel satisfies the defendant's

7

burden to prove the manifest injustice or miscarriage of justice required by plain-error review." *Cox*, 659 S.W.3d at 653-54.

The principal opinion's analysis of the second step, is incongruous with the case law on manifest injustice resulting from structural errors. Although overwhelming evidence of Barnett's guilt may preclude a finding of manifest injustice for *trial* error, the denial of Barnett's Sixth Amendment right to counsel is a *structural* error that undermines the entire framework of his criminal trial. Analyzing a structural error in terms of prejudice is conceptually untenable "[b]ecause harm is irrelevant to the basis of the underlying the right." *Weaver*, 582 U.S. at 295.

For this reason, the principal opinion's reliance on *State v. Walter*, 479 S.W.3d 118, 126 (Mo. banc 2016), to support its proposition there was no error because there was overwhelming evidence of guilt at trial is flawed. In *Walter*, the Court analyzed whether there was plain error in the admission of a photograph during closing argument. *Id.* at 125. Again, this is a trial error, not a structural error. This Court can adequately assess the harm that erroneous admission of evidence has on a trial and whether the admission amounted to a manifest injustice.

Here, by contrast, the circuit court's error was in failing to determine whether standby counsel was appropriate, amounting to a denial of Barnett's Sixth Amendment right to counsel. Such a denial is a structural error that taints the entirety of the proceeding. Rather than surmising that the circuit court may not have appointed standby counsel anyway, I would reverse the case and remand for the court to make this determination.

Accordingly, I dissent from the principal opinion. I would reverse the circuit court's judgment and remand for a new trial.

_____

John P. Torbitzky, P.J.

8